# EXHIBIT 4

Page 1

1                 UNITED STATES DISTRICT COURT

2                 FOR THE DISTRICT OF COLUMBIA

3    UNITED STATES SECURITIES AND        *

4    EXCHANGE COMMISSION,                *

5         Plaintiff,                     *   Case No.

6             v.                         *   1:11-CV-02054-RLW

7    GARFIELD TAYLOR, INCORPORATED,      *

8    et al.,                             *

9         Defendants and Relief          *

10        Defendants.                    *

11   * * * * * * * * * * * * * * * *

12

13                 Monday, August 6, 2012

14                     Washington, D.C.

15

16       VIDEOTAPED DEPOSITION OF GARFIELD TAYLOR

17       The videotaped deposition of GARFIELD TAYLOR

18   was taken on Monday, August 6, 2012, at the

19   Securities and Exchange Commission, 100 F Street,

20   N.E., Washington, D.C., before CATHRYN BAUER, RPR,

21   Stenotype Reporter and Notary Public in and for the

22   District of Columbia.

Garfield Taylor                                                    August 6, 2012

Washington, D.C.

| Page 2 | | Page 4 | |
|---|---|---|---|
| 1 | APPEARANCES: | 1 | CONTENTS |
| 2 | | 2 | |
| 3 | For the Plaintiff: | 3 | EXAMINATION OF GARFIELD TAYLOR |
| 4 | RICHARD HONG, ESQ. | 4 | BY MR. HONG ..................................6 |
| 5 | RICHARD JOHNSTON, ESQ. | 5 | |
| 6 | U.S. SECURITIES AND EXCHANGE COMMISSION | 6 | EXHIBITS MARKED |
| 7 | 100 F Street, N.E. | 7 | (Attached to original transcript) |
| 8 | Washington, D.C. 20549 | 8 | |
| 9 | (202) 551-4431; hongr@sec.gov | 9 | GARFIELD TAYLOR |
| 10 | (202) 551-4743; johnstonr@sec.gov | 10 | EXHIBIT NO.                    PAGE |
| 11 | | 11 | 1:    Plaintiff SEC's First Request for    21 |
| 12 | For Defendant Garfield Taylor: | 12 | Documents to Defendant Garfield M. |
| 13 | ALBERT WILSON, JR., JD, MBA | 13 | Taylor. |
| 14 | THE WILSON FIRM, LLC | 14 | |
| 15 | 1050 Connecticut Avenue, N.W., 10th Floor | 15 | 2:    Letter dated June 12, 2008.    85 |
| 16 | Washington, D.C. 20036 | 16 | |
| 17 | (202) 609-7217; awilson@thewilsonfirm.com | 17 | |
| 18 | | 18 | —o0o— |
| 19 | | 19 | |
| 20 | | 20 | |
| 21 | | 21 | |
| 22 | | 22 | |

| Page 3 | | Page 5 | |
|---|---|---|---|
| 1 | Appearances, continued: | 1 | PROCEEDINGS |
| 2 | | 2 | VIDEOGRAPHER:  We're now on the record in the |
| 3 | For Defendant Benjamin Dalley: | 3 | matter of the Exchange and — Securities and Exchange |
| 4 | LAURENCE STORCH, ESQ. | 4 | Commission v. Garfield Taylor, Incorporated, et al. |
| 5 | POLLACK & STORCH | 5 | in the United States District Court for the District |
| 6 | 1130 Connecticut Avenue, N.W., Suite 500 | 6 | of Columbia, Case Number 1:11-CV-02054.  Today's date |
| 7 | Washington, D.C. 20036 | 7 | is August 6, 2012.  The time is approximately 10:06. |
| 8 | (202) 246-5800; storch@pollackstorch.com | 8 | The location of the deposition is the Securities and |
| 9 | | 9 | Exchange Commission, 100 F Street, Northeast, |
| 10 | STEPHANIE BRYANT, ESQ. | 10 | Washington, D.C.  This is the deposition of Garfield |
| 11 | CLIFFORD & GARDE, LLP | 11 | Taylor. |
| 12 | 1707 L Street, N.W., Suite 500 | 12 | At this time, would counsel please introduce |
| 13 | Washington, D.C. 20036 | 13 | yourselves and state whom you represent. |
| 14 | (202) 280-6118; sbryant@cliffordgarde.com | 14 | MR. WILSON:  Al Wilson.  I'm sorry.  Al Wilson, |
| 15 | | 15 | The Wilson Firm, LLC.  I represent Mr. Garfield |
| 16 | | 16 | Taylor. |
| 17 | Also present, Conway Barker, Videographer. | 17 | MR. STORCH:  My name is Lawrence Storch of |
| 18 | | 18 | Pollack & Storch. |
| 19 | | 19 | MS. BRYANT:  My name is Stephanie Bryant.  I'm |
| 20 | | 20 | from Clifford & Garde, and I also represent Ben |
| 21 | | 21 | Dalley. |
| 22 | | 22 | MR. JOHNSTON:  Richard Johnston, SEC |

Alderson Reporting Company
1-800-FOR-DEPO

Garfield Taylor                                                    August 6, 2012

Washington, D.C.

Page 6

1  Enforcement.
2    MR. HONG:  And my name is Richard Hong.  Good
3  morning, Mr. Garfield Taylor.  I represent the
4  plaintiff, the Securities and Exchange Commission.
5    VIDEOGRAPHER:  My name is Conway Barker.  The
6  court reporter is Cathryn Bauer.
7    Would you please swear in the witness, and we
8  can proceed.
9    COURT REPORTER:  Sir, please raise your right
10  hand.
11    Do you solemnly state under the penalties of
12  perjury that the statements made and the answers
13  given in this proceeding shall be the truth and
14  nothing but the truth?
15    THE WITNESS:  Yes.
16    COURT REPORTER:  Thank you, sir.
17    Counsel?
18         CROSS-EXAMINATION
19    BY MR. HONG:
20    Q.  Good morning, Mr. Garfield Taylor.
21    A.  Good morning.
22    Q.  Would you give us your full name, please.

Page 7

1    A.  Although I wish to cooperate with you guys,
2  on the advice of my counselor, I respectfully decline
3  to answer your question based on the protection
4  afforded to me by the United States Constitution.
5    Q.  You're not even willing to give your name?
6    A.  No.
7    Q.  Now, is this invocation of your Fifth
8  Amendment privilege based on advice with counsel?
9    A.  I think that — although I wish to cooperate,
10  on the advice of counsel, I respectfully decline to
11  answer your question based on the protection afforded
12  to me by the United States Constitution.
13    Q.  You understand that by invoking the Fifth
14  Amendment privilege into a civil proceeding like this
15  where you're a defendant, that there are consequences
16  as a result of that?  Do you understand that, sir?
17    A.  Although I wish to cooperate, on the advice
18  of counsel, I respectfully decline to answer your
19  question based on the protection afforded to me by
20  the United States Constitution.
21    Q.  And is your — it still your final decision
22  today that you want to invoke your Fifth Amendment

Page 8

1  privilege, recognizing the consequences of what
2  you're doing today?
3    A.  Although I wish to cooperate, on the advice
4  of counsel, I respectfully decline to answer your
5  question based on the protection afforded to me by
6  the United States Constitution.
7    Q.  Mr. Garfield Taylor, where do you live?
8    A.  Although I wish to cooperate, on the advice
9  of counsel, I respectfully decline to answer your
10  question based on the protection afforded to me by
11  the United States Constitution.
12    Q.  I'm going to continue to ask you questions
13  notwithstanding your invocation of Fifth Amendment
14  privilege — okay? — which I — we're going to go
15  through it.  If you for some reason decide to answer
16  a question, please do so.  Your answer has to be
17  truthful.  Do you understand that?
18    A.  Although I wish to cooperate, on the advice
19  of counsel, I respectfully decline to answer your
20  question based on the protection afforded to me by
21  the United States Constitution.
22    Q.  Now, for this deposition to work,

Page 9

1  Mr. Garfield Taylor, you need to provide truthful
2  testimony.  Do you understand that?
3    A.  Although I wish to cooperate, under the
4  advice of counsel, I respectfully decline to answer
5  your question based on the protection afforded to me
6  by the United States Constitution.
7    Q.  Any reason why you cannot give truthful
8  today, Mr. Garfield Taylor?
9    A.  Although I wish to cooperate, on the advice
10  of counsel, I respectfully decline to answer your
11  question based on the protection afforded to me by
12  the United States Constitution.
13    Q.  Now, Mr. Garfield Taylor, you at one time or
14  may still live at 3408 Wisconsin Avenue Northwest,
15  Washington — I'm sorry.  Let me restate that
16  question.
17    Mr. Garfield Taylor, you either still live or
18  once lived recently at 6111 Rosemont Circle in North
19  Bethesda, Maryland, ZIP code 20850.  Isn't that
20  correct?
21    A.  Although I wish to cooperate, on the advice
22  of counsel, I respectfully decline to answer your

3 (Pages 6 to 9)

Garfield Taylor                                                        August 6, 2012
Washington, D.C.

---

**Page 10**

1  question based on the protection afforded to me by
2  the United States Constitution.
3      Q. And you also had businesses called Garfield
4  Taylor, Incorporated at 3408 Wisconsin Avenue
5  Northwest, Suite 212, Washington, D.C. 20016.
6  Correct?
7      A. Although I wish to cooperate, on the advice
8  of counsel, I respectfully decline to answer your
9  question based on the protection afforded to me by
10 the United States Constitution.
11     Q. Now, you also had a business called Gibraltar
12 Asset Management Group, LLC at 3408 Wisconsin Avenue
13 Northwest, Suite 212, Washington, D.C. 20016,
14 correct?
15     A. Although I wish to cooperate, on the advice
16 of counsel, I respectfully decline to answer your
17 question based on the protection afforded to me by
18 the United States Constitution.
19     Q. Now, you previously gave testimony to the
20 SEC, did you not?
21     A. Although I wish to cooperate, on the advice
22 of counsel, I respectfully decline to answer your

---

**Page 11**

1  question based on the protection afforded to me by
2  the United States Constitution.
3      Q. Did you give truthful testimony when you
4  previously gave sworn testimony to the SEC during the
5  SEC investigation?
6      A. Although I wish to cooperate, on the advice
7  of counsel, I respectfully decline to answer your
8  question based on the protection afforded to me by
9  the United States Constitution.
10     Q. Did you now, you were under oath at the time,
11 as well, weren't you, Mr. Garfield Taylor?
12     A. Although I wish to cooperate, on the advice
13 of counsel, I respectfully decline to answer your
14 question based on the protection afforded to me by
15 the United States Constitution.
16     Q. And at that time, you had counsel just like
17 you have today, didn't you?
18     A. Although I wish — although I wish to
19 cooperate, on the advice of counsel, I respectfully
20 decline to answer your question based on the
21 protection afforded to me by the United States
22 Constitution.

---

**Page 12**

1      Q. And in that investigative testimony you gave
2  before the Securities and Exchange Commission before
3  you were charged civilly for this case, you did
4  actually answer some questions, did you not?
5      A. Although I wish to cooperate, on the advice
6  of counsel, I respectfully decline to answer your
7  question based on the protection afforded to me by
8  the United States Constitution.
9      Q. As to those questions you actually answered
10 substantively, not invoke any privilege of any type,
11 did you testify truthfully?
12     A. Although I wish to cooperate, on the advice
13 of counsel, I respectfully decline to answer your
14 question based on the protection afforded to me by
15 the United States Constitution.
16     Q. And you did have an opportunity to review
17 that testimony that the SEC provided to you as part
18 of discovery in this case, did you not?
19     A. Although I wish to cooperate, on the advice
20 of counsel, I respectfully decline to answer your
21 question based on the protection afforded to me by
22 the United States Constitution.

---

**Page 13**

1      Q. Are you now invoking your Fifth Amendment
2  privilege based on your prior testimony that you gave
3  to the SEC?
4      A. Although I wish to cooperate, on the advice
5  of counsel, I respectfully decline to answer your
6  question based on the protection afforded to me by
7  the United States Constitution.
8      Q. Mr. Garfield Taylor, you are not a licensed
9  broker or securities dealer, are you?
10     A. Although I wish to cooperate, on the advice
11 of counsel, I respectfully decline to answer your
12 question based on the protection afforded to me by
13 the United States Constitution.
14     Q. You offered and solicited securities without
15 any license. Is that true?
16     A. Although I wish to cooperate, on the advice
17 of counsel, I respectfully decline to answer your
18 question based on the protection afforded to me by
19 the United States Constitution.
20     Q. You are not a registered broker.
21     A. Although I wish to cooperate, on the advice
22 of counsel, I respectfully decline to answer your

---

4 (Pages 10 to 13)

Garfield Taylor                                                                        August 6, 2012
                                    Washington, D.C.

| Page 14 |
| --- |

1  question based on the protection afforded to me by
2  the United States Constitution.
3      Q. You had no specialized training in securities
4  trading, did you?
5      A. Although I wish to cooperate, on the advice
6  of counsel, I respectfully decline to answer your
7  question based on the protection afforded to me by
8  the United States Constitution.
9      Q. When you were at Fannie Mae, you did no
10  trading in securities, did you?
11      A. Although I wish to cooperate, on the advice
12  of counsel, I respectfully decline to answer your
13  question based on the protection afforded to me by
14  the United States Constitution.
15      Q. And you also didn't trade any options of any
16  sort while you were at Fannie Mae, did you?
17      A. Although I wish to cooperate, on the advice
18  of counsel, I respectfully decline to answer your
19  question based on the protection afforded to me by
20  the United States Constitution.
21      Q. You had no relevant — no relevant experience
22  whatsoever that you could — that you obtained from

| Page 15 |
| --- |

1  Fannie Mae that could be used for running your
2  Garfield Taylor, Incorporated and Gibraltar Asset
3  Management Group, correct?
4      A. Although I wish to cooperate, on the advice
5  of counsel, I respectfully decline to answer your
6  question based on the protection afforded to me by
7  the United States Constitution.
8      Q. Notwithstanding you told investors that you
9  gained valuable experience at Fannie Mae in
10  securities trading.
11      A. Although I wish to cooperate, on the advice
12  of counsel, I respectfully decline to answer your
13  question based on the protection afforded to me by
14  the United States Constitution.
15      Q. Notwithstanding your lack of experience at
16  Fannie Mae relating to securities trading, you told
17  investors that was an experience that could be
18  trusted upon and relied upon by investors.
19      A. Although I wish to cooperate, on the advice
20  of counsel, I respectfully decline to answer your
21  question based on the protection afforded to me by
22  the United States Constitution.

| Page 16 |
| --- |

1      Q. Garfield Taylor which I will now call as GTI
2  for — abbreviating was established in Year 2000,
3  wasn't it?
4      A. All — although I wish to cooperate, on the
5  advice of counsel, I respectfully decline to answer
6  your question based on the protection afforded to me
7  by the United States Constitution.
8      Q. You were the chief executive officer, CEO,
9  and the sole owner of Garfield Taylor, Incorporated,
10  GTI. Isn't that right?
11      A. Although I wish to cooperate, on the advice
12  of counsel, I respectfully decline to answer your
13  question based on the protection afforded to me by
14  the United States Constitution.
15      Q. What was GTI supposed to do?
16      A. Although I wish to cooperate, on the advice
17  of counsel, I respectfully decline to answer your
18  question based on the protection afforded to me by
19  the United States Constitution.
20      Q. Wasn't it purporting to offer services
21  including real estate development; construction;
22  options trading; and mortgage marketing?

| Page 17 |
| --- |

1      A. All — although I wish to cooperate, on the
2  advice of counsel, I respectfully decline to answer
3  your question based on the protection afforded to me
4  by the United States Constitution.
5      Q. What was Gibraltar Asset Management, I will
6  now call in short GAM, G-A-M?
7      A. Although I wish to cooperate, on the advice
8  of counsel, I respectfully decline to answer your
9  question based on the protection afforded to me by
10  the United States Constitution.
11      Q. Wasn't GAM, Gibraltar Asset Management,
12  founded in May of 2008?
13      A. Although I wish to co-op — cooperate, on the
14  advice of counsel, I respectfully decline to answer
15  your question based on the protection afforded to me
16  by the United States Constitution.
17      Q. Weren't you the chief executive officer, CEO,
18  and the controlling member?
19      A. Although I wish to cooperate, on the advice
20  of counsel, I respectfully decline to answer your
21  question based on the protection afforded to me by
22  the United States Constitution.

5  (Pages 14 to 17)

Garfield Taylor                                                    August 6, 2012

Washington, D.C.

| Page 22 | Page 24 |
|---|---|
| 1  break? | 1  restart that. |
| 2  VIDEOGRAPHER: Off the record at 10:21. | 2  You understood that based on what's on the |
| 3  (A recess was taken from 10:21 a.m. to 11:08 a.m.) | 3  first page that any response should have been |
| 4  VIDEOGRAPHER: Back on the record at 11:08. Go | 4  provided to the SEC within 30 days of the date of the |
| 5  ahead. | 5  service of this request which means that some time on |
| 6  MR. HONG: We're back on the record. We had a | 6  or about July 6, 7th, around that time, by then, you |
| 7  longer break than we had anticipated because the | 7  should have provided a response? You understood |
| 8  witness needed some additional time for a break, and | 8  that, didn't you? |
| 9  so that's why we took a break. And that's why we're | 9  A. On the advice of counsel, I plea the Fifth. |
| 10  here. We're now ready to respond -- ready to resume. | 10  Q. And you failed to give any responses |
| 11  MR. STORCH: Mr. Hong, I understand that you | 11  whatsoever to these document requests, did you not? |
| 12  had some private conversations with the witness and | 12  A. On the advice of counsel, I plea the Fifth. |
| 13  his counsel during the beginning of that break | 13  Q. I want to go through some of these document |
| 14  period? | 14  requests and ask you at this time whether or not you |
| 15  MR. HONG: There were some discussions, but | 15  have any documents relating to this request. Turn to |
| 16  it's not relevant to this deposition. Okay. And I | 16  page 2 of Exhibit 1. |
| 17  also had private discussions along the -- getting the | 17  A. On the advice of counsel, I plea the Fifth. |
| 18  coffee with you, as well. And I think that was | 18  Q. Now, Document Number 1ne requests any and all |
| 19  irrelevant to this deposition, as well. | 19  documents that relate to supporting or providing the |
| 20  So all right. Let us proceed. | 20  basis for in any manner Defendant Garfield Taylor's |
| 21  BY MR. HONG: | 21  denial as set forth in March 14th, 2012, answer of |
| 22  Q. So take a look at what's been marked, I | 22  Garfield Taylor to -- Garfield Taylor's answer to the |

| Page 23 | Page 25 |
|---|---|
| 1  guess, Exhibit 1. | 1  complaint at page 1; that is, Mr. Taylor's denial |
| 2  A. Yeah. | 2  that he was operating through two entities that he |
| 3  Q. And that Exhibit 1 is entitled Plaintiff | 3  controlled, Garfield Taylor, Incorporated, GTI, and |
| 4  Securities and Exchange Commission's First Request | 4  Garfield -- Gibraltar Asset Management, LLC, GAM to |
| 5  for Documents to Defendant Garfield M. Taylor. And | 5  defraud over 130 investors, primarily middle-class |
| 6  this was served to everybody, including yourself, Mr. | 6  residents and charitable organizations in the |
| 7  Taylor, on or about June 5th, 2012. Do you see that? | 7  Washington, D.C. metropolitan area, of more than |
| 8  A. On advice of counsel, I -- I plea the Fifth. | 8  27 million from at least 2005 until 2010? |
| 9  Q. This was something called a discovery tool. | 9  A. On the advice of counsel, I plea the Fifth. |
| 10  That was an opportunity for the SEC to ask for some | 10  Q. Do you have any documents relating to what I |
| 11  documents from you directly in connection with the | 11  just read that you set forth as one of your denials |
| 12  SEC lawsuit that you're testifying in. Do you | 12  in your answer? |
| 13  understand that? | 13  A. On the advice of counsel, I plea the Fifth. |
| 14  A. On advice of counsel, I plea the Fifth. | 14  Q. As to Document Request Number 2, the SEC |
| 15  Q. Now, isn't it also true that once you | 15  requested any and all documents that relate to |
| 16  received that, you declined to provide any responses | 16  supporting or providing a basis for -- in any manner |
| 17  whatsoever? Isn't that true? | 17  Defendant Garfield Taylor's denial as set forth in -- |
| 18  A. On the advice of counsel, I -- I plea the | 18  in his March 14th, 2012 answer at page 2, relating to |
| 19  Fifth. | 19  Paragraph 2, of the complaint that Garfield Taylor |
| 20  Q. Now, you understood that this response was -- | 20  denies that he made material misrepresentations and |
| 21  should have been provided to us within 30 days of the | 21  omissions. |
| 22  service which was on or about June 5th -- let me | 22  A. On the advice of counsel, I plea the Fifth. |

Garfield Taylor                                                                    August 6, 2012

Washington, D.C.

| Page 26 |
|---|
| 1   Q. More simply, Mr. Garfield Taylor, do you have |
| 2  any documents whatsoever that you can provide to the |
| 3  SEC that supports your denial that you made no |
| 4  material misrepresentation or omission? |
| 5   A. On the advice of counsel, I plea the Fifth. |
| 6   Q. The SEC also requested documents relating to |
| 7  that support or provide any basis in any manner your |
| 8  denial in your answer where you denied that you |
| 9  engaged in a scheme or that you -- you |
| 10 misappropriated investor funds.  Do you have any |
| 11 documents that would support your denial in your |
| 12 answer of March 14th, 2012 that you did not -- you |
| 13 did not engage in a scheme or that you did not |
| 14 misappropriate investor funds? |
| 15  A. On advice of counsel, I plea the Fifth. |
| 16  Q. In the Document Request Number 4, the SEC |
| 17 requested any and all documents that relate to, |
| 18 support, or provide a basis for in any manner your |
| 19 denial in -- in -- in your March 14th, 2012 answer |
| 20 that you deny that you offered or sold securities? |
| 21  A. On the advice of counsel, I plea the Fifth. |
| 22  Q. Do you have any documents whatsoever to |

| Page 28 |
|---|
| 1   A. On the advice of counsel, I plead the Fifth. |
| 2   Q. So in other words, do you have any documents |
| 3  to -- to show, that you can provide to the SEC, that |
| 4  would support your denial that you did not make |
| 5  materially false misrepresentations with respect to |
| 6  investor presentations that you made where you |
| 7  assured investors that they were assuming very little |
| 8  risk by investing with GTI? |
| 9   A. On the advice of counsel, I plea the Fifth. |
| 10  Q. Didn't you tell investors, in fact, that they |
| 11 were assuming very little risk by investing with GTI? |
| 12  A. On the advice of counsel, I plea the Fifth. |
| 13  Q. Number 7, Document Request Number 7, asks for |
| 14 any and all documents that relate to, support, or |
| 15 provide the basis for in any manner your denial as |
| 16 set forth in March 14th, 2012 answer that again, you |
| 17 are -- you deny making materially false -- false |
| 18 representations to investors regarding the risks of |
| 19 investing in GTI, Garfield Taylor, Incorporated, and |
| 20 the company's intended use of investor proceeds.  Do |
| 21 you have any documents to that effect? |
| 22  A. On the advice of counsel, I plea the Fifth. |

| Page 27 |
|---|
| 1  support your denial that you -- your denial that |
| 2  you -- that you did not offer or sell securities? |
| 3   A. On the advice of counsel, I plea the Fifth. |
| 4   Q. Number 5.  The SEC requested any and all |
| 5  documents that relate to supporting or providing the |
| 6  basis for in any manner your denial as set forth in |
| 7  your -- in your March 14th, 2012 answer that you |
| 8  solicited investors. |
| 9   A. On advice of counsel, I plea the Fifth. |
| 10  Q. More simply, do you have any documents |
| 11 whatsoever showing that you did not solicit |
| 12 investors? |
| 13  A. On advice of counsel, I plea the Fifth. |
| 14  Q. Document Number 6, Document Request Number 6 |
| 15 asks, any and all documents that relate to supporting |
| 16 or providing the basis for in any manner on your |
| 17 denial set forth in your March 14th, 2012 answer |
| 18 where you deny that you made materially false |
| 19 representations in respect to -- respect to investor |
| 20 presentations made by yourself where you assured |
| 21 investors that they were assuming very little risk by |
| 22 investing with GTI, Garfield Taylor, Incorporated. |

| Page 29 |
|---|
| 1   Q. Document Request Number 8, do you have -- the |
| 2  request asks for any and all documents that relate |
| 3  to, support, or provide the basis for in any manner |
| 4  your denial as set forth in your answer, March 14th, |
| 5  2012 answer, that you deny that you told an investor, |
| 6  Number 4, investor from Upper Marlboro, Maryland that |
| 7  an investment with GTI was guaranteed and as safe as |
| 8  an FDIC-insured account.  Do you have any documents |
| 9  support that denial? |
| 10  A. On advice of counsel, I plea the Fifth. |
| 11  Q. Mr. Garfield Taylor, did you tell the an |
| 12 investor from Upper Marlboro, Upper Marlboro, |
| 13 Maryland that an investment with GTI is guaranteed |
| 14 and is as safe as an FDIC-insured account? |
| 15  A. On advice of counsel, I plea the Fifth. |
| 16  Q. Document Request Number 9, any and all |
| 17 documents that -- the SEC requested any and all |
| 18 documents that relate to supporting or providing the |
| 19 basis for in any manner your denial in March 14th, |
| 20 2012 answer where you denied that the agreements |
| 21 provided to certain investors were -- were false, |
| 22 falsely stated, or that he may -- let me restate |

8 (Pages 26 to 29)

Garfield Taylor                                                      August 6, 2012

Washington, D.C.

| Page 30 | Page 32 |
|---|---|
| 1  that. | 1  restart that. |
| 2  Did you -- you deny in your answer on | 2  We were at Document Request Number 11.  You |
| 3  March 14, 2012, that -- that the agreements you | 3  can look at it yourself, by the way, if you want. |
| 4  provided to the investors were not false; that the | 4  You can read along with me. |
| 5  representations made in those agreements were | 5  Mr. Taylor, the Document Request Number 11 |
| 6  truthfully stated; and that there were no false | 6  says any and all documents that relate to support, |
| 7  statements.  Do you have any -- any documents to | 7  supporting or providing a basis for in any manner |
| 8  support your denial? | 8  your denial as set forth in your March 14th, 2012 |
| 9  A.  On the advice of counsel, I plea the Fifth. | 9  answer where you deny -- |
| 10  Q.  Document Request Number -- well, actually, | 10  A.  It's -- |
| 11  let me ask you about -- when you were talking to the | 11  Q.  -- where you deny -- where you deny that GTI |
| 12  investors about Garfield Taylor, Incorporated, did | 12  operated as a Ponzi scheme; that you and GTI used the |
| 13  you tell all the truth? | 13  principal invested by later investors to make |
| 14  A.  I'm sorry.  Did I -- | 14  interest payments to earlier investors.  Do you have |
| 15  MR. WILSON:  If you don't understand the | 15  any documents to support your denial? |
| 16  question, you can ask Mr. Hong to restate the | 16  A.  On advice of counsel, I plea the Fifth. |
| 17  question. | 17  Q.  Mr. Garfield Taylor, did you not in fact |
| 18  THE WITNESS:  Okay. | 18  operate a Ponzi scheme through GTI? |
| 19  BY MR. HONG: | 19  A.  On advice of counsel, I plea the Fifth. |
| 20  Q.  Okay.  When you were talking to the -- to the | 20  Q.  Mr. Garfield Taylor, did you not in fact use |
| 21  investors regarding Garfield Taylor, Incorporated, | 21  the principal invested by later investors to make |
| 22  GTI, about the investment program there, did you | 22  interest payments to earlier investors? |

| Page 31 | Page 33 |
|---|---|
| 1  always tell the truth? | 1  A.  On the advice of counsel, I plea the Fifth. |
| 2  A.  On the advice of counsel, I plea the Fifth. | 2  Q.  Document Request Number 12, any and all |
| 3  Q.  Document Request Number 10.  The SEC | 3  documents that relate to -- I'm sorry? |
| 4  requested any and all documents that relate to | 4  (Discussion was held off the record.) |
| 5  supporting or providing a basis for in any manner | 5  Sorry.  Hope I wasn't leaning forward too |
| 6  your denial as set forth in your March 14th, 2012 | 6  much.  Sorry. |
| 7  answer where you deny that you materially | 7  All right.  Document Request Number 12, |
| 8  misrepresented or that you made materially false | 8  Mr. Garfield Taylor, any and all documents that |
| 9  statements.  Do you have any support, any | 9  relate to supporting or providing the basis for in |
| 10  documentation for that denial? | 10  any manner your denial as set forth in -- in your |
| 11  A.  On the advice of counsel, I plea the Fifth. | 11  March 14th, 2012 answer where you deny that your and |
| 12  Q.  Document Request Number 11.  Any and all | 12  GTI's circular use of investor proceeds was deceptive |
| 13  documents that relate to supporting or providing the | 13  in nature because it created a false appearance that |
| 14  basis for in any manner your denial as set forth in | 14  GTI was prospering and yielding profits to investors |
| 15  your March 14th, 2012 answer where you deny that | 15  when, in fact, it was operating at a loss. |
| 16  GTI -- | 16  A.  On the advice -- |
| 17  A.  Could I take a -- one second? | 17  Q.  Do you have any documents supporting your |
| 18  Q.  Sure. | 18  denial? |
| 19  (Discussion was held off the record.) | 19  A.  On the advice of counsel, I plea the Fifth. |
| 20  THE WITNESS:  Sorry. | 20  Q.  Do you have any documents to show that GTI |
| 21  BY MR. HONG: | 21  was in fact prospering, doing well financially? |
| 22  Q.  Okay.  Where were -- all right.  Let me | 22  A.  On the advice of counsel, I plea the Fifth. |

9 (Pages 30 to 33)

Page 34

1    Q. Wasn't it true, Mr. Garfield Taylor, that GTI
2   was, in fact, operating at a loss?
3    A. On the advice of counsel, I plea the Fifth.
4    Q. Document Request Number 13, any and all
5   documents that relate to supporting or providing the
6   basis for in any manner your denial as set forth in
7   March 14th, 2012 answer that you -- where you deny
8   that you -- or you deny that you commingled the
9   assets of GAM, GAM, Gibraltar Asset Management, and
10   GTI, Garfield Taylor, Incorporated, and operated the
11   two entities as a joint Ponzi scheme. Do you have
12   any documents to support your denial?
13    A. On the advice of counsel, I plea the Fifth.
14    Q. Isn't it a fact, Mr. Taylor, that you
15   commingled assets of GAM and GTI?
16    A. On the advice of counsel, I plea the Fifth.
17    Q. Isn't it a fact, Mr. Garfield Taylor, that
18   you operated GAM and GTI as a joint Ponzi scheme?
19    A. On the advice of counsel, I plea the Fifth.
20    Q. Let's go to Document Request 14. Any and all
21   documents that relate to supporting or providing the
22   basis for in any manner your denial as set forth in

Page 35

1   your March 14, 2012 answer where you deny that the
2   promissory notes were securities. Do you have any
3   documents to support that denial?
4    A. On the advice of counsel, I plea the Fifth.
5    Q. Isn't it in fact that the promissories --
6   isn't it a fact that you knew that the promissory
7   securities were, in fact, securities?
8    A. Could you restate that again?
9    Q. Sure. Isn't it a fact that you knew that the
10   promissory notes were securities?
11    A. On the advice of counsel, I plea the Fifth.
12    Q. Document Request 15. The SEC requested any
13   and all documents that relate to supporting or
14   providing the basis for in any manner your denial as
15   set forth in your March 14th, 2012, answer that you
16   deny that you made materially false and misleading
17   statements in GAM -- Gibraltar Asset Management
18   PowerPoint. Do you see that?
19    A. I --
20    Q. Do you have any documents to support your
21   denial?
22    A. On advice of counsel, I plea the Fifth.

Page 36

1    Q. Isn't it true that you worked on the GAM
2   PowerPoint with others such as Mr. Dalley,
3   Mr. Taylor, Mr. Maurice Taylor, Mr. Randy Taylor?
4    A. On the advice of counsel, I plea the Fifth.
5    Q. Wasn't it true that the GAM PowerPoint
6   contained materially false and misleading statements?
7    A. On the advice of counsel, I plea the Fifth.
8    Q. From Document 16, Document Request 16, the
9   SEC requested any and all documents that relate to
10   supporting or providing the basis in any manner your
11   denial as set forth in your March 14th, 2012 answer
12   that -- where you deny that GAM did not a covered
13   call strategy. Do you have any documents to support
14   your denial?
15    A. On the advice of counsel, I plea the Fifth.
16    Q. Isn't it a fact, Mr. Garfield Taylor, that
17   GAM, Gibraltar Asset Management, did not follow a
18   covered call strategy?
19    A. On advice of counsel, I plea the Fifth.
20    Q. Document Request 17. The SEC requested any
21   and all documents that relate to supporting and
22   providing a basis for in any manner your denial as

Page 37

1   set forth in your March 14 of 2012 answer where you
2   deny that GAM made material misrepresentations. Do
3   you have any documents that support this denial?
4    A. On the advice of counsel, I plea the Fifth.
5    Q. Mr. Garfield Taylor, isn't it in fact the
6   truth that GAM made many material misrepresentations
7   conveyed to the investors and prospective investors?
8    A. On advice of counsel, I plea the Fifth.
9    Q. Document Request 18, the SEC requested any
10   and all documents that relate to supporting or
11   providing the basis for in any manner Defendant
12   Garfield Taylor's denial, your denial, as set forth
13   in your March 14th, 2012 answer where you deny that
14   GAM made materially false statements? Do you have
15   any supports to -- do you have any documents to
16   support that denial, your denial?
17    A. On the advice of counsel, I plea the Fifth.
18    Q. Mr. Taylor, isn't it true that GAM made many
19   materially false statements to investors and
20   prospective investors?
21    A. On advice of counsel, I plea the Fifth.
22    Q. Document Request Number 19, any and all

Garfield Taylor                                                               August 6, 2012
Washington, D.C.

---

Page 38

1   documents that relate — the SEC requested any and
2   all documents that relate to, support, or providing
3   the basis for in any manner your denial as set forth
4   in your March 14, 2012 answer where you deny that GAM
5   falsely represented the information? Do you see
6   that?
7       A. On the advice of counsel, I plea the Fifth.
8       Q. Do you have any documents to support your
9   denial that we just went over?
10      A. On the advice of counsel, I plea the Fifth.
11      Q. Isn't it true that GAM falsely represented
12  information to investors and prospective investors?
13      A. On the advice of counsel, I plea the Fifth.
14      Q. Document Request 20 asked for — asked you,
15  by the SEC, any and all documents that relate to
16  supporting and providing the basis for in any manner
17  your denial as set forth in your March 14th, 2012
18  answer where you deny that GAM PowerPoint was
19  materially false. Do you have any documents to
20  support your denial?
21      A. On the advice of counsel, I plea the Fifth.
22      Q. Isn't it true, Mr. Garfield Taylor, that GAM

---

Page 39

1   PowerPoint was materially false in many respects?
2       A. On the advice of counsel, I plea the Fifth.
3       Q. Document Request Number 21, the SEC requested
4   any and all documents that relate to supporting or
5   providing a basis for in any manner your denial as
6   set forth in your March 14, 2012 answer where you
7   deny that GAM made false representations?
8       A. On the advice —
9       Q. One second. Let me finish, sir.
10          Do you have any documents to support your
11  denial?
12      A. On the advice of counsel, I plea the Fifth.
13      Q. Isn't it true that GAM made many false
14  representations to investors and prospective
15  investors?
16      A. On the advice of counsel, I plea the Fifth.
17      Q. Document Request 22. The SEC requested any
18  and all documents that relate to, supporting, or
19  providing the basis for in any manner, Mr. Garfield
20  Taylor's denial as set forth in your March 14, 2012
21  answer that you deny that you received funds by means
22  of material misrepresentation. Do you have any

---

Page 40

1   documents to support your denial?
2       A. On the advice of counsel, I plea the Fifth.
3       Q. Isn't it a fact, Mr. Garfield Taylor, that
4   you did in fact receive funds by means of material
5   misrepresentations?
6       A. On the advice of counsel, I plea the Fifth.
7       Q. Document Request Number 23 requested from you
8   any and all documents that relate to supporting or
9   providing the basis for in any manner your denial as
10  set forth in your March 14, 2012 answer that where
11  you deny making materially false statements to
12  individual investors that you met around the D.C.
13  area, in and out of D.C., to encourage their
14  investment in GAM. Do you have any documentation,
15  any documents to support your denial?
16      A. On the advice of counsel, I plea the Fifth.
17      Q. Mr. Taylor, isn't it a fact that you in fact
18  made materially false statements to individual
19  investors that you met in and outside of Washington,
20  D.C. to encourage their investments in GAM?
21      A. On the advice of counsel, I plea the Fifth.
22      Q. Document Request Number 24. Any and all

---

Page 41

1   documents that relate to, supporting, or providing a
2   basis for in any manner your denial as set forth in
3   your March 14th, 2012 answer where you denied that in
4   February 2009, you provided to at least one
5   prospective investor, a Baptist church in Maryland,
6   with a fake letter of recommendation from Charles
7   Schwab? Do you have any documentation to support
8   your denial?
9       A. On the advice of counsel, I plea the Fifth.
10      Q. Isn't it a fact, Mr. Garfield Taylor, that
11  around February of 2009, you did provide to at least
12  one investor a Baptist church in Maryland with a fake
13  letter of recommendation or some type of letter of
14  recommendation from Charles Schwab?
15      A. On the advice of counsel, I plea the Fifth.
16      Q. Isn't it a fact that that letter actually
17  never — that that was presented to an investor, the
18  Baptist church this Maryland, was never prepared by
19  Charles Schwab?
20      A. On the advice of counsel, I plea the Fifth.
21      Q. Isn't it true that you submitted that letter
22  to a Baptist church in Maryland to show that Charles

---

11 (Pages 38 to 41)

Garfield Taylor

August 6, 2012

Washington, D.C.

**Page 42**

1  Schwab endorsed, supported you and GAM?
2      A. On the advice of counsel, I plea the Fifth.
3      Q. Isn't it a fact that that whole Charles
4  Schwab letter was nothing but a big fake?
5      A. On the advice of counsel, I plea the Fifth.
6      Q. Document Request 25. Any and all documents
7  that relate to, supporting, or providing a basis for
8  in any manner Mr. Garfield Taylor's denial as set
9  forth in your March 14th, 2012 answer where you deny
10  that a purported letter of recommendation from
11  Charles Schwab is a fabrication. Do you have any
12  documentation to support your denial?
13      A. On the advice of counsel, I plea the Fifth.
14      Q. Document Request 26. The SEC requested any
15  and all documents that relate to, supporting, or
16  providing the basis for in any manner your denial as
17  set forth in your March 14th, 2012 answer where you
18  deny that you convinced individuals to give you the
19  user name and password to — to their online
20  brokerage accounts in order to place trades in those
21  accounts. Do you have any documentation to spurt
22  your denial?

**Page 43**

1      A. On the advice of counsel, I plea the Fifth.
2      Q. Mr. Garfield Taylor, you in fact did ask a
3  number of individuals to give you the user name and
4  password to their online brokerage accounts that you
5  could place trades in those acts. Isn't it a fact?
6      A. On the advice of counsel, I plea the Fifth.
7      Q. In fact, you actually lost a lot of money in
8  conducting such trades. Isn't that right?
9      A. On the advice of counsel, I plea the Fifth.
10      Q. And you did this even though you were not a
11  registered broker. Isn't that right?
12      A. On the advice of counsel, I plea the Fifth.
13      Q. You did this to trade on their online
14  brokerage accounts, even though you had no license to
15  conduct such trade. Isn't that right?
16      A. On the advice of counsel, I plea the Fifth.
17      Q. Document Request 27 requests that any and all
18  documents that relate to, supporting, or providing
19  the basis for in any manner your denial as set forth
20  in your March 14th, 2012 answer where you deny that
21  you effected securities transactions for the accounts
22  of others. Do you have any documentation, any

**Page 44**

1  documents to support your denial?
2      A. On the advice of counsel, I plea the Fifth.
3      Q. Isn't it true, Mr. Taylor, that you did in
4  fact effect securities transactions for accounts of
5  others?
6      A. On the advice of counsel, I plea the Fifth.
7      Q. Exhibit — sorry, Document Request Number 28.
8  The SEC requested from you — from you any and all
9  documents that relate to, supporting, or providing
10  the basis for in any manner your denial as set forth
11  in your March 14, 2012 answer that — where you deny
12  that between 2005 and 2010, that you diverted from GTI and
13  misappropriated approximately $5 million from GTI and
14  GAM accounts for personal gain, including $73,000 to
15  the private school that your children attended. Do
16  you have any documentations, any documents to support
17  your denial?
18      A. On the advice of counsel, I plea the Fifth.
19      Q. Isn't it true that in fact, between 2005 to
20  2010, you diverted and misappropriated approximately
21  $5 million from GTI and GAM accounts for personal
22  gain?

**Page 45**

1      A. On the advice of counsel, I plea the Fifth.
2      Q. And as part of that personal gain, you
3  diverted $73,000 of that misappropriated funds from
4  the investors for paying private school tuition for
5  your children. Isn't that a fact, sir?
6      A. On the advice of counsel, I plea the Fifth.
7      Q. Document Request Number 29, any and all
8  documents that relate to, supporting, or providing a
9  basis for in any manner your denial as set forth in
10  your March 14th, 2012 answer where you deny that
11  between 2005 and 2010, you made payments to family
12  and friends who had no right to receive them from GTI
13  and GAM investor funds. Do you have any documents to
14  support that denial?
15      A. On the advice of counsel, I plea the Fifth.
16      Q. Now, Mr. Garfield Taylor, isn't it in fact
17  the truth that between 2005 and 2010, you made
18  payments to your family and friends who had no right
19  to receive money from GTI and GAM investor funds?
20      A. On the advice of counsel, I plea the Fifth.
21      Q. Mr. Taylor, you misappropriated the investor
22  funds from GTI and GAM and provided payments to

12 (Pages 42 to 45)

Garfield Taylor                                                                      August 6, 2012

Washington, D.C.

| Page 46 |
|---|
| 1  family and friends who had no right to receive them. |
| 2  Isn't that true? |
| 3  A. On the advice of counsel, I plea the Fifth. |
| 4  Q. Document Request 30, any and all documents |
| 5  that relate to supporting or providing the basis for |
| 6  in any manner your denial as set forth in your |
| 7  March 14th, 2012 answer where you deny that you |
| 8  operated GTI and GAM as a joint Ponzi scheme. Do you |
| 9  have any documents support your denial? |
| 10  A. On the advice of counsel, I plea the Fifth. |
| 11  Q. Do you — do you have any documents |
| 12  whatsoever — strike that. |
| 13  Mr. Taylor, isn't it really the truth that |
| 14  you operated GTI and GAM as a joint Ponzi scheme? |
| 15  A. On the advice of counsel, I plea the Fifth. |
| 16  Q. You understood that Ponzi scheme was illegal, |
| 17  did you not? |
| 18  A. On the advice of counsel, I plea the Fifth. |
| 19  Q. Document Request Number 31. The SEC |
| 20  requested that any and all documents that relate to |
| 21  supporting and providing the basis or in any manner |
| 22  your denial as set forth in your March 14th, 2012 |

| Page 47 |
|---|
| 1  answer where you deny that you relied upon new |
| 2  investor — where you relied upon new investor |
| 3  deposits to meet your interest payment obligations to |
| 4  previous investors? Do you have any documents to |
| 5  support your denial? |
| 6  A. On advice of counsel, I plead the Fifth. |
| 7  Q. Now, isn't it the truth, Mr. Taylor, that you |
| 8  did in fact rely on new investor deposits to meet |
| 9  your payment obligations to previous investors? |
| 10  A. On the advice of counsel, I plea the Fifth. |
| 11  Q. Let's move on from that exhibit. |
| 12  Isn't it true that through Garfield Taylor, |
| 13  Incorporated, GTI, and Gibraltar Asset Management, |
| 14  GAM, that you engaged in fraudulent conduct? |
| 15  A. On the advice of counsel, I plea the Fifth. |
| 16  Q. Did you defraud any investors? |
| 17  A. On the advice of counsel, I plea the Fifth. |
| 18  Q. Did you steal from any investors? |
| 19  A. On the advice of counsel, I plea the Fifth. |
| 20  Q. Did you defraud more than 100 investors of |
| 21  more than $27 million from at least 2005 until 2010? |
| 22  A. On the advice of counsel, I plea the Fifth. |

| Page 48 |
|---|
| 1  Q. Did you orchestrate the frauds involving GTI |
| 2  and GAM with the assistance of Mr. Benjamin Dalley, |
| 3  Jeffrey A. Taylor, William B. Mitchell, Maurice G. |
| 4  Taylor and Randolph M. Taylor? |
| 5  A. Could you restate that again? |
| 6  Q. Sure. Could I have the court reporter read |
| 7  that? |
| 8  (The court reporter read back as requested.) |
| 9  A. Okay. |
| 10  (Discussion was held off the record.) |
| 11  Okay. Go to the next. |
| 12  Q. Do you want to answer that question, or do |
| 13  you want — |
| 14  A. Oh. On the advice of counsel, I plea the |
| 15  Fifth. |
| 16  Q. Did you not in fact lure people into |
| 17  investing in promissory notes issued by GTI and GAM |
| 18  by persuading them that they could earn above market |
| 19  rates of returns generally around 20 percent annually |
| 20  with little or no risk through something called a |
| 21  covered call strategy and principal protection |
| 22  techniques that you claim to be using? |

| Page 49 |
|---|
| 1  A. On the advice of counsel, I plea the Fifth. |
| 2  Q. Did you tell investors that with GTI and GAM |
| 3  that they — I'm sorry. |
| 4  Did you tell investors that their investments |
| 5  with GTI and GAM were like bank accounts insured by |
| 6  the Federal Deposit Insurance Corporation? |
| 7  A. On the advice of counsel, I plea the Fifth. |
| 8  Q. Isn't it the truth that in reality, that the |
| 9  investment funds that you traded were generally |
| 10  placed in highly-risk, naked options? |
| 11  A. On the advice of counsel, I plea the Fifth. |
| 12  Q. And in fact, the investment funds that were |
| 13  placed in such highly-risk, naked options were in |
| 14  fact lost? |
| 15  A. On the advice of counsel, I plea the Fifth. |
| 16  Q. In order — isn't it true that in order for |
| 17  you to maintain a steady flow of new-investor money, |
| 18  you induced current investors and others to solicit |
| 19  and refer new investors to you in exchange for |
| 20  commission payments based on the amounts invested? |
| 21  A. On the advice of counsel, I plea the Fifth. |
| 22  Q. Did you persuade individuals to give you |

13  (Pages 46 to 49)

Garfield Taylor                                                    August 6, 2012
                        Washington, D.C.

---

**Page 50**

1   online access to their personal brokerage accounts
2   for the purpose of placing trades in exchange or for
3   a share of any profits generated?
4       A. On the advice of counsel, I plea the Fifth.
5       Q. Isn't it true that for both GTI and GAM, that
6   their accounts were depleted through losses in
7   speculative trading by you?
8       A. On the — on the advice of counsel, I plea
9   the Fifth.
10      Q. Isn't it true that the money obtained from
11  the investors for GTI and GAM were misappropriated
12  for your personal use?
13      A. On advice of counsel, I plea the Fifth.
14      Q. And isn't it true that including in that
15  misappropriation was you distributing the money to
16  people that you work with, include Mr. Dalley,
17  Mr. Randolph Taylor, Mr. Maurice Taylor, Mr. Jeffrey
18  King?
19      A. On the advice of counsel, I plea the Fifth.
20      Q. GTI's primary focus and source of revenue
21  was high-risk options trading by you and Maurice
22  Taylor. Isn't that true?

---

**Page 51**

1       A. On the advice of counsel, I plea the Fifth.
2       Q. And you knew that the high-risk option
3   trading was generally not profitable?
4       A. On the advice of counsel, I plea the Fifth.
5       Q. And you also knew that any trading profits
6   that were generated by GTI was overwhelmed by losses.
7   Wasn't that true?
8       A. On the advice of counsel, I plea the Fifth.
9       Q. As a result, you knew that GTI operated at a
10  net loss since at least 2005. Isn't that true?
11      A. On the advice of counsel, I plea the Fifth.
12      Q. You told GTI investors that you would invest
13  the principal of their promissory notes using the
14  strategy of selling covered call options. Isn't that
15  true?
16      A. On the advice of counsel, I plea the Fifth.
17      Q. And the investors provided money to GTI for
18  the promissory notes, right?
19      A. On the advice of counsel, I plea the Fifth.
20      Q. And all the money provided by the investors
21  to GTI were pulled and collected together. Wasn't it
22  so?

---

**Page 52**

1       A. On the advice of counsel, I plea the Fifth.
2       Q. And then the investors would get payments
3   from you through GTI based on what GTI and you did,
4   correct?
5       A. On the advice of counsel, I plea the Fifth.
6       Q. And from at least 2010 — 2005 to 2010, GTI
7   and you offered and sold unregistered securities.
8   Isn't that right?
9       A. On the advice of counsel, I plea the Fifth.
10      Q. And you offered and sold unregistered
11  securities to more than 112 investors. Isn't that
12  right?
13      A. On the advice of counsel, I plea the Fifth.
14      Q. And during that same time period, at least
15  2005 to 2010, GTI and you obtained more than
16  15.7 million through these unregistered security
17  sales. Isn't that right?
18      A. On the advice of counsel, I plea the Fifth.
19      Q. GTI never filed a registration statement with
20  the SEC, did it?
21      A. On the advice of counsel, I plea the Fifth.
22      Q. Did you provide any — did you provide

---

**Page 53**

1   investors with any offering memorandum?
2       A. On the advice of counsel, I plea the Fifth.
3       Q. And did you provide investors with any
4   audited financial statements?
5       A. On the advice of counsel, I plea the Fifth.
6       Q. Were any investors required to meet any
7   eligibility requirements in order to meet — in order
8   to invest in GTI?
9       A. On the advice of counsel, I plea the Fifth.
10      Q. Isn't it true that many of GTI's investors
11  had little or no investment experience?
12      A. On the advice of counsel, I plea the Fifth.
13      Q. Isn't it true that many of GTI's investors
14  had invested their life savings with GTI or had taken
15  equity out of their homes in order to invest?
16      A. On the advice of counsel, I plea the Fifth.
17      Q. Isn't it true that GTI and you solicited
18  investors by primarily targeting middle-class
19  residents and charitable organizations in the
20  Washington, D.C. metropolitan area?
21      A. On the advice of counsel, I plea the Fifth.
22      Q. In order to promote the sale of the GTI

---

                                    14 (Pages 50 to 53)

Garfield Taylor                                                                    August 6, 2012
Washington, D.C.

| Page 54 | Page 56 |
|---|---|
| 1 promissory notes, you and GTI solicited investors in | 1 you frequently emphasized investors about your prior |
| 2 around Washington, D.C. area over the telephone and | 2 work experience at Fannie Mae. Isn't that true? |
| 3 in face-to-face meetings? | 3    A. On the advice of counsel, I plea the Fifth. |
| 4    A. On the advice of counsel, I – I plea the | 4    Q. And then to assure the prospective investors, |
| 5 Fifth. | 5 you also describe how you were paying interest |
| 6    Q. In fact, you – in order to encourage new | 6 payments to your current investors and that – how |
| 7 investors you – you told GTI's current investors and | 7 that showed how successful GTI's business was. Isn't |
| 8 others to solicit new investors in exchange for | 8 that true? |
| 9 commission payments based on the amounts ultimately | 9    A. On the advice of counsel, I plea the Fifth. |
| 10 received? | 10    Q. Now, we talked about this before, but you |
| 11·    A. On the advice of counsel, I plea the Fifth. | 11 didn't trade options for Fannie Mae, did you? |
| 12    Q. And when GTI needed more money, more cash | 12    A. On the advice of counsel, I plea the Fifth. |
| 13 flow, you offered specials in which you invited | 13    Q. And the fact that interest payments were made |
| 14 existing investors to invest additional funds for a | 14 to investors wasn't really indicative of the |
| 15 limited time at a higher interest rate than the | 15 successfulness of the GTI's business, was it? |
| 16 investor was previously receiving? | 16    A. On the advice of counsel, I plea the Fifth. |
| 17    A. On the advice of counsel, I plea the Fifth. | 17    Q. The reason why you were able to make interest |
| 18    Q. And from at least 2005 to 2010, you | 18 payments was because you were basically making |
| 19 communicated with potential investors in person and | 19 Ponzi-like return of investor capital from the |
| 20 over the phone and made presentations where you urged | 20 investors' money derived later on. Wasn't that |
| 21 individuals to invest in GTI through any available | 21 right? |
| 22 means, including their personal savings, retirement | 22    A. On the advice of counsel, I plea the Fifth. |

| Page 55 | Page 57 |
|---|---|
| 1 funds and by refinancing their homes? | 1    Q. You made numerous misrepresentations to |
| 2    A. On the advice of counsel, I plea the Fifth. | 2 investors regarding the risks of investing in GTI and |
| 3    Q. And in these presentations regarding GTI to | 3 the – and how the company was going to use investor |
| 4 investors, you told investors that they were assuming | 4 proceeds. Isn't that right? |
| 5 very little risk? | 5    A. On the advice of counsel, I plea the Fifth. |
| 6    A. On the advice of counsel, I plea the Fifth. | 6    Q. Now, let's take some examples. For example, |
| 7    Q. These representations you made to the | 7 in connection with the investments made in 2005 and |
| 8 investors were false because GTI's primary source of | 8 2007 you falsely stated to an investor from Lanham, |
| 9 revenue was high-risk, naked options trading that | 9 Maryland that GTI protects principal by maintaining a |
| 10 resulted in losses that overwhelmed any gains? | 10 reserve account. Isn't that right? |
| 11    A. On the advice of counsel, I plea the Fifth. | 11    A. On the advice of counsel, I plea the Fifth. |
| 12    Q. And you knew that? | 12    Q. And in truth, you knew that GTI didn't |
| 13    A. On the advice of counsel, I plea the Fifth. | 13 have – didn't maintain a reserve account. Isn't |
| 14    Q. But you still told the investors – | 14 that right? |
| 15    A. On the – | 15    A. On the advice of counsel, I plea the Fifth. |
| 16    Q. – the prospective investors? | 16    Q. Another example: In connection with |
| 17    A. On the advice of counsel, I plea the Fifth. | 17 investments made in September and December 2007, you |
| 18    Q. Because you were the GTI's CEO and the sole | 18 falsely told an investor from Greenbelt, Maryland |
| 19 shareholder, and you knew these statements to be | 19 that GTI employed a covered call strategy, and the |
| 20 false. | 20 principal investment will remain in cash and stocks. |
| 21    A. On the advice of counsel, I plea the Fifth. | 21 Isn't that what you told them? |
| 22    Q. And then to assure the prospective investors, | 22    A. On the advice of counsel, I plea the Fifth. |

15 (Pages 54 to 57)

| Page 58 |
|---|

1     Q.  In truth, Mr. Taylor, you knew that GTI did
2  not employ a covered call strategy, and the investors
3  were distributed -- investor funds were distributed
4  to yourself, earlier investors, and the people that
5  you work with.
6     A.  On the advice of counsel, I plea the Fifth.
7     Q.  Another example:  In connection with an
8  investment in the summer of 2008, you represented to
9  an investor from Mitchellville, Maryland, that you
10  had employed a covered call strategy for years; that
11  an investment in GTI involved minimal risk; and GTI
12  could return 15 to 25 percent interest annually.
13  Isn't that right?
14     A.  On the advice of counsel, I plan -- I plea
15  the Fifth.
16     Q.  And in truth, what you just -- what you told
17  investor from Mitchellville, when I just mentioned
18  was all false, wasn't it?
19     A.  On the advice of counsel, I plea the Fifth.
20     Q.  You knew that the investor funds were traded
21  in high-risk options and that GTI did not employ a
22  covered call strategy.

| Page 59 |
|---|

1     A.  On the advice of counsel, I plea the Fifth.
2     Q.  Mr. Taylor, you knew that GTI had operated at
3  a net loss since at least 2005, didn't you?
4     A.  On the advice of counsel, I plea the Fifth.
5     Q.  Now, another example in connection with an
6  investment in May 2008.  You told an investor from
7  Upper Marlboro, Maryland that investment in GTI is
8  guaranteed and is safe as an FDIC-insured account.
9  Isn't that right?
10     A.  On the advice of counsel, I plea the Fifth.
11     Q.  In truth, you knew that these statements to
12  the investor from Upper Marlboro was false because
13  GTI investments were subject to market risk and were
14  not insured.
15     A.  On the advice of counsel, I plea the Fifth.
16     Q.  You also provided investor agreements that
17  said that GTI promissory notes were insured and
18  collateralized when that wasn't the case, right?
19     A.  On the advice of counsel, I plea the Fifth.
20     Q.  You provided investment agreement dated
21  March 7th, 2008, with respect to an investor from
22  Chelten- -- Cheltenham, Maryland that made those

| Page 60 |
|---|

1  statements that GTI promissory notes were insured and
2  collateralized, right?
3     A.  On the advice of counsel, I plea the Fifth.
4     Q.  And an investor agreement prepared by GTI
5  around or on November 6, 2008, with respect to an
6  investor in Washington, D.C., there were also false
7  statements regarding whether GTI's promissory notes
8  were insured and collateralized.  Isn't that true?
9     A.  On the advice of counsel, I plea the Fifth.
10     Q.  Now, in connection with an investor agreement
11  prepared by GTI dated April 28th, 2009, with respect
12  to -- with respect to an investor from Alexandria,
13  Virginia, the agreement falsely stated that loans are
14  insured and collateralized by AIG and New York Life
15  Insurance for $7 million.  That was false, wasn't it?
16     A.  On the advice of counsel, I plea the Fifth.
17     Q.  And that agreement also said the loans are
18  collateralized by stock and cash of equal value of
19  clients' loan amount.  That wasn't true, was it?
20     A.  On the advice of counsel, I plea the Fifth.
21     Q.  Now, in connection with another investment
22  agreement dated November 6th 2008 with respect to an

| Page 61 |
|---|

1  investor from Washington, D.C. and another
2  agreement -- well, let's just go with that.  November
3  6, 2008 agreement with an investor from Washington,
4  D,C, you and GTI falsely represented that investor's
5  note was collateralized and secured by property.
6  Wasn't that right?
7     A.  On the advice of counsel, I plea the Fifth.
8     Q.  And in fact, the note said it was
9  collateralized and secured by property that neither
10  GTI nor you owned, right?
11     A.  On the advice of counsel, I plea the Fifth.
12     Q.  You said the same thing with respect to
13  another investor agreement dated July 27, 2009, with
14  respect to an investor from Clinton, Maryland.  Isn't
15  that right?
16     A.  On the advice of counsel, I plea the Fifth.
17     Q.  In that agreement with -- with an investor
18  from Clinton, Maryland, again you and GTI falsely
19  represented that the investor's note was
20  collateralized and secured by property that neither
21  GTI nor you owned.  Isn't that right?
22     A.  On the advice of counsel, I plea the Fifth.

16  (Pages 58 to 61)

Garfield Taylor                                                                                      August 6, 2012

Washington, D.C.

## Page 62

1     Q.  You knew that all these statements were false
2  because you -- as GTI's founder, CEO and the sole
3  owner, you knew that GTI did not insure the principal
4  invested or collateralize the loans with stock, cash,
5  real estate, or otherwise. Isn't that right?
6     A.  On the advice of counsel, I plea the Fifth.
7     Q.  You also misrepresented GTI's profitability
8  to investors and prospective investors, did you not?
9     A.  On the advice of counsel, I plan -- I plea
10  the Fifth.
11    Q.  We have to replace the tape here.
12    VIDEOGRAPHER:  This is end of Tape 1. Off the
13  record at 12:00 o'clock.
14    (A recess was taken from 12:00 p.m. to 12:03 p.m.)
15    Okay.  This is the beginning of Tape 2 in the
16  deposition of Mr. Taylor.  On the record at 12:03.
17    BY MR. HONG:
18    Q.  Mr. Garfield Taylor, we were talking about
19  GTI.  I will continue.
20    Isn't it true that in connection with an
21  investment made in November of 2008, you told an
22  investor from Germantown, Maryland that in light of

## Page 63

1  the fact that GTI could pay a 20 percent return, you
2  said, "You can only imagine how much we'd make."
3  Isn't that what happened?
4     A.  On the advice of counsel, I plea the Fifth.
5     Q.  And also in connection with an investment
6  made in May of 2008, you told an investor from Upper
7  Marlboro, Maryland that GTI typically generates a
8  return in excess of 40 percent from securities
9  trading.  Isn't that right?
10    A.  On the advice of counsel, I plea the Fifth.
11    Q.  Mr. Garfield Taylor, you knew that these
12  statements were false because you did not track the
13  profitability of your option ratings and had no basis
14  for believing that GTI could repay a 20 percent
15  interest rate based on revenue generated by the
16  company.  Isn't that true?
17    A.  On the advice of counsel, I plea the Fifth.
18    Q.  You knew that GTI had operated at a net loss
19  since at least 2005. Isn't that true?
20    A.  On the advice of counsel, I plea the Fifth.
21    Q.  And in fact, you and GTI used the principal
22  investment by later investors to make interest

## Page 64

1  payments to early investors. Isn't that right?
2     A.  On the advice of counsel, I plea the Fifth.
3     Q.  And you in fact deposited investor funds in
4  bank accounts from which you made payments to prior
5  investors, didn't you?
6     A.  On the advice of counsel, I plea the Fifth.
7     Q.  By operating in this manner, the manner I
8  just described in a prior question, you created a
9  false appearance that GTI was prospering and yielding
10  profits to investors when in fact, it was operating
11  at a loss. Isn't that true?
12    A.  On the advice of counsel, I plea the Fifth.
13    Q.  All right.  Why don't we break here before I
14  go to the next area.
15    VIDEOGRAPHER:  Off the record at 12:05.
16    (The noon recess was taken
17    from 12:05 p.m. to 1:25 p.m.)
18    Back on the record at 1:25.
19    BY MR. HONG:
20    Q.  We're back for the afternoon session.
21  Mr. Garfield Taylor, how are you?
22    A.  I'm okay.

## Page 65

1     MR. WILSON:  You may answer the question.
2     MR. HONG:  Why don't you write it down?  It's a
3  little bit different from...
4     BY MR. HONG:
5     Q.  Now, this -- again, the -- Gibraltar Asset
6  Management, how did the idea about forming and
7  organizing Gibraltar Asset Management come about?
8     A.  On the advice of counsel, I plea the Fifth.
9     Q.  Did you and others, including Benjamin
10  Dalley, Maurice Taylor, and Randolph Taylor together
11  conceive and organize Gibraltar Asset Management?
12    A.  On the advice of counsel, I plea the Fifth.
13    Q.  And did that happen around late 2007 and
14  early 2008?
15    A.  On the advice of counsel, I plea the Fifth.
16    Q.  Now, what did you tell investors about what
17  Gibraltar Asset Management was going to do?
18    A.  On the advice of counsel, I plea the Fifth.
19    Q.  Did you and others including Mr. Dalley,
20  Mr. Maurice Taylor, and Mr. Randy Taylor, advise
21  investors it was a company that followed a strict
22  covered call investment strategy?

17  (Pages 62 to 65)

Garfield Taylor                                                            August 6, 2012
                              Washington, D.C.

| Page 70 |
| --- |

1    Q.  And in order to prompt the sale of GAM
2   promissory notes, you and others including
3   Mr. Dalley, Mr. Randolph Taylor, Mr. Maurice Taylor
4   and others used the U.S. mails, electronic mail, and
5   had face-to-face meetings with potential investors
6   located in the Washington, D.C. area, as well as in
7   Georgia and Pennsylvania, right?
8    A.  On the advice of counsel, I plea the Fifth.
9    Q.  Now, from late 2007 to mid-2008, you,
10  Mr. Dalley, Mr. Randolph Taylor, and others jointly
11  prepared GAM's marketing materials, in particular a
12  PowerPoint presentation to present to potential
13  investors, right?
14   A.  On the advice of counsel, I plea the Fifth.
15   Q.  Did you work on any such presentation,
16  PowerPoint presentation?
17   A.  On the advice of counsel, I plea the Fifth.
18   Q.  And the -- the GAM PowerPoint was delivered
19  to GAM's investors and prospective investors in
20  meetings or through mail in and around Washington,
21  D.C. area, right?
22   A.  On the advice of counsel, I plea the Fifth.

| Page 71 |
| --- |

1    Q.  There were at least 18 investors who received
2   GAM PowerPoint presentations.
3    A.  On the advice of counsel, I plea the Fifth.
4    Q.  And you presented the GAM PowerPoint in
5   meetings in June 2008 with Hillcrest, right?
6    A.  On the advice of counsel, I plea the Fifth.
7    Q.  And you also presented GAM's PowerPoint in
8   meetings with an investment club in Philadelphia,
9   right?
10   A.  On the advice of counsel, I plea the Fifth.
11   Q.  Now, were your associates with you in these
12  meetings, including Mr. Benjamin Dalley, Mr. Randolph
13  Taylor, Mr. Maurice Taylor?
14   A.  On the advice of counsel, I plea the Fifth.
15   Q.  In late 2008, you presented the GAM
16  appropriate to a Baptist church in Maryland, didn't
17  you?
18   A.  On the advice of counsel, I plea the Fifth.
19   Q.  What did you tell the Baptist church in
20  Maryland?
21   A.  On the advice of counsel, I plea the Fifth.
22   Q.  Were your associates present with you during

| Page 72 |
| --- |

1   the presentation to the Baptist church in Maryland?
2    A.  On the advice of counsel, I plea the Fifth.
3    Q.  Now, in these meetings with -- with the
4   Baptist church in Maryland, were they advised that
5   GAM followed a strict covered call trading strategy?
6    A.  On the advice of counsel, I plea the Fifth.
7    Q.  Did you advise that -- that because GAM
8   followed a strict covered call trading strategy, that
9   it could be expected to generate profits in any
10  market and protect the principal invested?
11   A.  On the advice of counsel, I plea the Fifth.
12   Q.  Did you tell the investors that or
13  prospective investors that there would be little or
14  no risk involved in that -- in investing with GAM
15  because it followed a covered call trading strategy?
16   A.  On the advice of counsel, I plea the Fifth.
17   Q.  In February of 2009, you on behalf of GAM
18  provided a letter to the Baptist church in Maryland
19  that was contemplating a $1 million investment,
20  right?
21   A.  On the advice of counsel, I plea the Fifth.
22   Q.  And in this letter to the Baptist church in

| Page 73 |
| --- |

1   February 2009, you wrote that GAM, Gibraltar Asset
2   Management, had successfully implemented its
3   proprietary covered call strategy, wasn't it?
4    A.  On the advice of counsel, I plea the Fifth.
5    Q.  Was that true?
6    A.  On the advice of counsel, I plea the Fifth.
7    Q.  Or was that a lie?
8    A.  On the advice of counsel, I plea the Fifth.
9    Q.  Did you lie to a Baptist church in
10  Philadelphia, sir?
11   A.  On the advice of counsel, I plea the Fifth.
12   Q.  In reality, you knew that GAM didn't follow a
13  covered call strategy.  You knew that, didn't you?
14   A.  On the advice of counsel, I plea the Fifth.
15   Q.  In fact, you and Mr. Maurice Taylor traded
16  investor assets by purchasing a high-risk, naked
17  put-and-call option.  That's what you were doing,
18  weren't you?
19   A.  On the advice of counsel, I plea the Fifth.
20   Q.  If that's not what you were doing, can you
21  tell me exactly what you were doing?
22   A.  On the advice of counsel, I plea the Fifth.

19  (Pages 70 to 73)

Garfield Taylor                                                                   August 6, 2012
Washington, D.C.

| Page 74 | Page 76 |
|---|---|

**Page 74**

1  Q. Now, so isn't it true that the actual
2  streaming that you were employing -- not the covered
3  call strategy, but whatever you were applying --
4  employed a far greater downside risk than a covered
5  call strategy?
6  A. On the advice of counsel, I plea the Fifth.
7  Q. And now -- and the rate of return for your
8  strategy was much, much less than any 15 or
9  20 percent annual return that you promised?
10  A. On the advice of counsel, I plea the Fifth.
11  Q. But notwithstanding that, GAM through use of
12  the PowerPoint said that investors would receive a 15
13  to 20 percent annual return, right?
14  A. On the advice of counsel, I plea the Fifth.
15  Q. In fact, GAM, when it made representations,
16  GAM PowerPoint which you had your -- your input in,
17  that GAM -- GAM had no basis for making that type of
18  statement because for one thing, you didn't track the
19  rate of return that you achieved in your trading.
20  Isn't that right?
21  A. On the advice of counsel, I plea the Fifth.
22  Q. What basis did you have at all for telling

**Page 75**

1  the investors that you could return 15 to 20 percent
2  of whatever the percentage of return that -- that you
3  were telling the investors you could return?
4  A. On the advice of counsel, I plea the Fifth.
5  Q. Now, you also told through the GAM PowerPoint
6  that we've spoken about that -- you and GAM assured
7  the investors that an outside, independent accountant
8  would provide external oversight. Didn't you?
9  A. On the advice of counsel, I plea the Fifth.
10  Q. What kind of assurances did you make about
11  any role by -- any role of an outside, independent
12  accountant?
13  A. On the advice of counsel, I plea the Fifth.
14  Q. But the truth is you knew that GAM never
15  retained an outside accountant to oversee or monitor
16  its accounts. Is that right?
17  A. On the advice of counsel, I plea the Fifth.
18  Q. You knew that.
19  A. On the advice of counsel, I plea the Fifth.
20  Q. And others who work with you like Mr. Dalley,
21  Mr. Maurice Taylor, Mr. Randy Taylor knew that, too.
22  A. On the advice of counsel, I plea the Fifth.

**Page 76**

1  Q. In addition, GAM through its use of its
2  PowerPoint, GAM PowerPoint, also represented to
3  investors that GAM employs something called a reserve
4  account, right?
5  A. On the advice of counsel, I plea the Fifth.
6  Q. And what is a reserve account?
7  A. On the advice of counsel, I plea the Fifth.
8  Q. And you -- the -- in the GAM PowerPoint, you
9  also represented also that not only did GAM employ a
10  reserve account, but GAM -- GAM was employing only
11  profit-sweeping techniques to protect investors'
12  principal from loss, right?
13  A. On the advice of counsel, I plea the Fifth.
14  Q. Didn't you tell investors that?
15  A. On the advice of counsel, I plea the Fifth.
16  Q. And you knew that these statements about the
17  existence of a reserve account or a profit-sweeping
18  technique were false because GAM didn't keep
19  principal intact or maintain a reserve account or
20  huge profits. Isn't that true?
21  A. On the advice of counsel, I plea the Fifth.
22  Q. Rather, what happened was that investor

**Page 77**

1  principal that was set to be in a reserve account was
2  used in ongoing speculative trading, right?
3  A. On the advice of counsel, I plea the Fifth.
4  Q. Rather, investing -- investor present that
5  was supposed to be in a reserve account was used for
6  distributing to other defendants in this case. Is
7  that right?
8  A. On the advice of counsel, I plea the Fifth.
9  Q. Or the money that was supposed to be in a
10  reserve account was actually recycled back for
11  interest payments to earlier investors. Isn't that
12  right?
13  A. On the advice of counsel, I plea the Fifth.
14  Q. Now, isn't it true that GAM through its use
15  of GAM PowerPoint falsely represented that GAM's
16  covered call trading strategy generated consistent,
17  monthly cash flow?
18  A. On the advice of counsel, I plea the Fifth.
19  Q. Isn't it also true that GAM through its use
20  of GAM PowerPoint falsely represented that GAM's
21  covered trading -- covered call trading strategy was
22  virtually immune to market fluctuation and other

Alderson Reporting Company
1-800-FOR-DEPO

Garfield Taylor                                                                August 6, 2012
Washington, D.C.

| Page 78 |
|---|
| 1   sources of risk? |
| 2   A. On the advice of counsel, I plea the Fifth. |
| 3   Q. Now, do you know what this GAM's |
| 4   frequently-asked-questions document was about? |
| 5   A. On the advice of counsel, I plea the Fifth. |
| 6   Q. Are you familiar with it? |
| 7   A. On the advice of counsel, I plea the Fifth. |
| 8   Q. Now, in that GAM's frequently-asked-questions |
| 9   document, there was a representation that options |
| 10  trading is not risky. Correct? |
| 11  A. On the advice of counsel, I plea the Fifth. |
| 12  Q. In truth, option trading is very much risky. |
| 13  A. On the advice of counsel, I plea the Fifth. |
| 14  Q. You knew that. |
| 15  A. On the advice of counsel, I plea the Fifth. |
| 16  Q. Now instead of this, you told investors |
| 17  otherwise? |
| 18  A. On the advice of counsel, I plea the Fifth. |
| 19  Q. And based on the representations about |
| 20  options trading not being risky, people gave you a |
| 21  lot of money. |
| 22  A. On the advice of counsel, I plea the Fifth. |

| Page 79 |
|---|
| 1   Q. And then they wind up losing a lot of that |
| 2   money. |
| 3   A. On the -- on the advice of counsel, I plea |
| 4   the Fifth. |
| 5   Q. Through your trading losses. |
| 6   A. On the advice of counsel, I plea the Fifth. |
| 7   Q. You lied to them, to the investors. |
| 8   A. On the advice of counsel, I plea the Fifth. |
| 9   Q. You lied to the potential investors. |
| 10  A. On the advice of counsel, I plea the Fifth. |
| 11  Q. Now, the investment strategy that GAM did |
| 12  employ, purchasing something called naked puts and |
| 13  calls, was a far risker strategy than a strategy than |
| 14  that would be -- more common strategy that would be |
| 15  subject to market risk, right? |
| 16  A. On the advice of counsel, I plea the Fifth. |
| 17  Q. In other words, purchasing naked puts and |
| 18  calls was a riskier strategy than just ordinarily |
| 19  trading stocks and bonds? |
| 20  A. On the advice of counsel, I plea the Fifth. |
| 21  Q. And it would be much more risky than, in |
| 22  fact, trading covered call -- covered calls, correct? |

| Page 80 |
|---|
| 1   A. Under -- on the advice of counsel, I plea the |
| 2   Fifth. |
| 3   Q. Now, you made distributions to your |
| 4   principals, your associates at GAM, did you not? |
| 5   A. On advice of counsel, I plea the Fifth. |
| 6   Q. And what that means is that you made owners' |
| 7   distributions from GAM to your associates. |
| 8   A. On the advice of counsel, I plea the Fifth. |
| 9   Q. And this was money received from investors |
| 10  through GAM which you distributed to your associates |
| 11  who are codefendants in this case. |
| 12  A. On the advice of counsel, I plea the Fifth. |
| 13  Q. And these owners' distributions were at least |
| 14  $20,000 or more that you provided, distributed to |
| 15  codefendants in this case. |
| 16  A. On the advice of counsel, I plea the Fifth. |
| 17  Q. You obviously received a share of these |
| 18  owners' distributions, right? |
| 19  A. On the advice of counsel, I plead the Fifth. |
| 20  Q. Benjamin Dalley received owners' |
| 21  distributions, correct? |
| 22  A. On the advice of counsel, I plea the Fifth. |

| Page 81 |
|---|
| 1   Q. Mr. Randolph Taylor received owners' |
| 2   distributions -- |
| 3   A. On the -- |
| 4   Q. -- right? |
| 5   A. -- advice of counsel, I plea the Fifth. |
| 6   Q. Mr. Maurice Taylor received owners' |
| 7   distributions? |
| 8   A. On the advice of counsel, I plea the Fifth. |
| 9   Q. Mr. Jeffrey King received owners' |
| 10  distributions? |
| 11  A. On the advice of counsel, I plea the Fifth. |
| 12  Q. And the owners' distributions were provided |
| 13  after you and your codefendants successfully |
| 14  solicited and received significant investor funds by |
| 15  means of material misrepresentations. |
| 16  A. On the advice of counsel, I plea the Fifth. |
| 17  Q. What was the purpose of these owners' |
| 18  distributions, Mr. Garfield Taylor? |
| 19  A. On the advice of counsel, I plea the Fifth. |
| 20  Q. You also made false statements to individual |
| 21  investors when you met with them in and out of |
| 22  Washington, D.C. to encourage their investment in |

Alderson Reporting Company
1-800-FOR-DEPO

Garfield Taylor                                                    August 6, 2012
                         Washington, D.C.

| Page 98 | Page 100 |
|---|---|

**Page 98**

1  going to pay the money back?
2      A. On the advice of counsel, I plea the Fifth.
3      Q. Isn't GTI closed?
4      A. On advice of counsel, I plea the Fifth.
5      Q. Isn't GAM closed?
6      A. On the advice of counsel, I plea the Fifth.
7      Q. Besides paying for your children's tuition,
8  what other -- how did you spend the money that you
9  obtained, you misappropriated from investors?
10     A. On the advice of counsel, I plea the Fifth.
11     Q. Is it your position today that you did
12  nothing wrong?
13     A. On the advice of counsel, I plea the Fifth.
14     Q. Is it your position today that you didn't
15  defraud anybody in connection with GAM or GTI?
16     A. On advice of counsel, I plea the Fifth.
17     Q. I think I'm done.
18        Is there any question relating to GTI or GAM
19  that I can ask you now or any documents that I may
20  present to you that are relating to GTI or GAM that
21  you are not going to -- to take Five on?  In other
22  words, where you're going to give a full and

**Page 99**

1  substantive answer?
2      A. Under advice of counsel, I plea the Fifth.
3      MR. HONG:  I'm going to pass the witness.
4      MR. STORCH:  No questions.
5      VIDEOGRAPHER:  This concludes the deposition of
6  Mr. Taylor.  Off the record at 2:23, and it consists
7  of two tapes.
8
9            (The deposition concluded at
10           2:23 p.m.)
11
12
13
14
15
16
17
18
19
20
21
22

**Page 100**

1           CERTIFICATE OF DEPONENT
2  I hereby certify that I have read and examined the
3  foregoing transcript, and the same is a true and
4  accurate record of the testimony given by me.
5  Any additions or corrections that I feel are
6  necessary, I will attach on a separate sheet of
7  paper to the original transcript.
8
9      _____
10         Signature of Deponent
11
12  I hereby certify that the individual representing
13  himself/herself to be the above-named individual,
14  appeared before me this _____ day of _____,
15  2012, and executed the above certificate in my
16  presence.
17      _____
18         NOTARY PUBLIC IN AND FOR
19
20      _____
21           County Name
22  MY COMMISSION EXPIRES:

**Page 101**

1  District of Columbia, to wit:
2      I, Cathryn Bauer, the officer before whom the
3  foregoing deposition was taken, do hereby certify
4  that the within-named witness personally appeared
5  before me at the time and place herein set out, and
6  after having been duly sworn by me, was examined by
7  counsel.
8      I further certify that the examination was
9  recorded stenographically by me and this transcript
10  is a true record of the proceedings.
11     I further certify that I am not of counsel to
12  any of the parties, nor an employee of counsel, nor
13  related to any of the parties, nor in any way
14  interested in the outcome of this action.
15
16
17
18           Cathryn Bauer
19           Notary Public
20
21  MY COMMISSION EXPIRES:  March 31, 2017
22

26 (Pages 98 to 101)

District of Columbia, to wit:

I, Cathryn Bauer, the officer before whom the foregoing deposition was taken, do hereby certify that the within-named witness personally appeared before me at the time and place herein set out, and after having been duly sworn by me, was examined by counsel.

I further certify that the examination was recorded stenographically by me and this transcript is a true record of the proceedings.

I further certify that I am not of counsel to any of the parties, nor an employee of counsel, nor related to any of the parties, nor in any way interested in the outcome of this action.


_____
Cathryn Bauer
Notary Public


MY COMMISSION EXPIRES:   March 31, 2017