**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 1:11-CV-02054-RLW** |
| **GARFIELD TAYLOR, INCORPORATED, GIBRALTAR ASSET MANAGEMENT GROUP, LLC, GARFIELD M. TAYLOR, BENJAMIN C. DALLEY, JEFFREY A. KING, RANDOLPH M. TAYLOR, MAURICE G. TAYLOR, and WILLIAM B. MITCHELL,** | **Jury Trial Demanded** |
| **Defendants,** | |
| **and** | |
| **THE KING GROUP, LLC, MARKETING AND FINANCIAL CONSULTANTS, INC., and REVERB ENTERPRISES, LLC,** | |
| **Relief Defendants.** | |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S**
**PROPOSED JURY VOIR DIRE QUESTIONS**

Plaintiff Securities and Exchange Commission respectfully proposes the following

questions for *voir dire* with respect to the trial of this case.

**GENERAL QUESTIONS**

    **1.**    Background questions:

        a.    Employment. Where do you work? What do you do?  Are you a supervisor or manager?

        b.    Education.    What is the highest level of education you reached? Did you receive any degree?  What did you study?

        c.    Residence.    Where (city, town, or county) do you live?

        d.    Marital/living status.  Are you married or otherwise living with a significant other?  If so, where does your spouse or significant other work?  What does your spouse or significant other do for a living?

        e.    Children.    Do you have any children?  How old are they?  Do they attend school or work?  If work, what do they do for a living?

        f.    Military background.  Have you served in the military?  If so, did you receive an honorable discharge?

        g.    Reading habits.  What newspapers, magazines, and websites do you read or visit on a regular basis?  Do you normally follow business or financial news?  Do you read financial publications or visit financial websites; *e.g.*, The Wall Street Journal, Barron's, Bloomberg, CNNMoney.com, Fortune, Forbes, Investor's Daily, Value Line, Yahoo Finance, or investment newsletters?  Have you read books or articles, or seen television programs or movies, or heard radio programs about stock fraud cases or cases brought by the Securities and Exchange Commission?  [If so, please identify or describe the books or articles, television programs or movies,

or radio programs.  Would that affect your ability to be fair and impartial in this case?]

h.      Television.      What kind of television programs do you watch?  Do you watch any television programs or listen to radio programs specifically oriented towards business or financial news?

i.      Social Clubs. What clubs, groups, or organizations do you belong to, or have you belonged to in the last five years?

## TRIAL PERIOD AND SCHEDULE

2.      The trial of this case is expected to last approximately four days.  Do you have any plans or commitments which would seriously conflict with your ability to serve as a juror during this period?  Do you believe that serving for this period will create an undue hardship on you?

3.      The regularly scheduled hours in this case for the jurors will be _____ a.m. to _____ p.m with a break for lunch.  Do these hours seriously conflict with any commitment or responsibility you have?  Do you believe these hours will impose an undue burden on you?

4.      Do you have any medical or physical conditions which make it difficult for you to see or hear the evidence in the courtroom or to sit for several hours at a time while evidence is presented.  Do you have any medical or physical conditions which would make it difficult for you to see or hear the evidence or sit as a juror in this case?

5.      Do you have any difficulty in reading or understanding English?

6.      As part of the trial, witnesses will come in and testify in court.  Some witnesses, however, will not be available live, and so their testimony may be presented via videotape.  Some of the testimony may be longer than others.  Does anyone have a problem with this mode of presentation?

## PARTIES AND COUNSEL

**7.**    This is a securities enforcement action.  The United States Securities and Exchange Commission, which is sometimes known as the Commission or the SEC, is the plaintiff and brought this case against a number of defendants and relief defendants.

**8.**    Have any of you, a member of your family or a close friend ever had any dealings with the SEC?  If so, what was the nature of the dealing?

**9.**    The lawyers representing the plaintiff, the Securities and Exchange Commission, in this case are:

Richard Hong;

Robert Dodge;

Richard Johnston; and

Sarah Allgeier.

Do any of you know any of these attorneys?  If so, how do you know any of them?

**10.**    The defendants in this case are:

Garfield M. Taylor;

Benjamin C. Dalley;

Randolph M. Taylor; and

Reverb Enterprises, LLC.

Do any of you know any of them?     If so, how do you know them?

**11.**    Garfield Taylor is proceeding *pro se*.  He is representing himself.  Do you know him?  If so, how do you know him?

**12.**    The lawyers representing defendant Benjamin Dalley are:

Laurence Storch;

John Clifford; and

Stephanie Bryant.

**13.**     The lawyer representing defendant Randolph Taylor is:

George Doumar.

**14.**     The lawyer representing relief defendant Reverb Enterprises, LLC is:

George Doumar.

Do you know any of the defense attorneys mentioned?  If so, how do you know any of them?  If so, please describe.

**15.**     Among others, Garfield Taylor, Inc. and Gibraltar Asset Management Group, LLC were defendants:  Are you familiar with Garfield Taylor, Inc. or Gibraltar Asset Management Group, LLC or anyone who worked at either firm?  If so, how are you familiar?

## WITNESSES AND COMPANIES

**16.**      The following list contains the names of some of the possible witnesses who may testify in this case:

[To be added]

Do any of you know any of these people?  If so, how do you know any of them?

## MEDIA

**17.**     Have you read or heard anything about this case or about anything related to this case?  If so, what have you read or heard?  Did it cause you to form any opinions which may influence your consideration of the evidence in this case?

## PRIOR EXPERIENCE AND TRAINING

**18.**     Have you ever invested in the stock market?  If so, please describe it.

**19.**     Have you ever invested in "promissory notes"?  If so, please describe.

**20.**     Have you ever sought the assistance of an investment adviser or an investment firm to invest? If so, please describe it.

**21.**     Have you ever engaged in stock trading of any type?  If so, please describe it.

**22.**     Have you ever worked in the investment field such as a stockbroker or an investment adviser?  Or in some other capacity in the investment filed?  If so, please describe it.

**23.**     Have you ever had any training or work experience in law?  If so, please describe it.

**24.**     Have you ever served on a jury before?  If so, please explain the circumstances and whether the case was a civil or criminal one. Were you a foreperson?  Did you reach a verdict?

**25.**     Those of you who have sat on criminal cases as a juror or watch television will have heard of "proof beyond a reasonable doubt."  That is the standard of proof that is used in criminal cases.  That is not the standard of proof that is to be used here since this is a civil case. Here, the SEC is required to prove its case by "a preponderance of the evidence," which is a lesser standard than that of beyond a reasonable doubt.  What that means is the SEC has to produce evidence which, considered in the light of all the facts, leads you to believe that what the SEC claims is more likely true than not.  To put it differently, if you were to put the SEC's and defendants Garfield M. Taylor, Benjamin C. Dalley, Randolph M. Taylor, and Reverb Enterprises, LLC's evidence on opposite sides of the scales, the SEC would have to make the scales tip slightly on its side.  If the SEC fails to meet this burden, the verdict must be for the defendants. With that understanding of the law, is there anyone on the jury panel who would hold the SEC to a greater burden of proof than that of a preponderance of the evidence?

## INVOLVMENT WITH LITIGATION AND LAW ENFORCEMENT

**26.**     Have you ever been investigated for any type of alleged wrongdoing by the government (Federal, state or local)?  If so, please describe the circumstances.

**27.**     Have you ever been a witness in any investigation for alleged wrongdoing by the government (Federal, state or local)?  If so, please describe the circumstances.

**28.** Have you ever been the victim of an investment or stock fraud?  If so, please describe the circumstances.

**29.** Have you ever been a witness in a civil or criminal case? If so, please explain the circumstances.

**30.** Have you, any members of your family, or close friends, ever been charged with a criminal offense, other than minor traffic violations? If so, please explain the circumstances.

**31.** Have you, or any member of your immediate family, ever been employed as a law enforcement officer?  If so, in what capacity?  If so, do you believe that this might influence your consideration of the evidence in the case?

**32.** Similarly, have any of you had any experience with a judicial or administrative case or investigation which might influence your consideration of the evidence in this case?

**33.** Have you ever been personally involved in a lawsuit before, whether it be as a plaintiff, defendant, or witness? [If so, please describe the circumstances. Specifically, what the case was about, what part the juror played in it, and how the case was resolved.]  Would you be able to set aside your experiences in that case and decide this case solely on the evidence you hear in court?

## WILLINGNESS TO FOLLOW INSTRUCTIONS AND THE LAW

**34.** At the end of the case, the Court (Judge Wilkins) will instruct you on the law applicable to this case and tell you that you must decide the case based on the law as the Court gives it to you.  If you disagree with the law as the Court gives it to you, either because you think the Court has stated it incorrectly or because you believe the law should be otherwise, do you have any doubt as to whether you will be able to apply the law as the Court gives it to you?

**35.** If you are selected as a juror in this case you will be asked to decide at the end of the case, based on the law as the Court gives it to you, and the evidence you see and hear in the courtroom, whether the defendants are liable under the claims in the Complaint.  You must do so

without regard to bias, sympathy, prejudice or any other such consideration.  Do you have any concerns about your ability to decide this case on this basis?

36.    Typically, when the Securities and Exchange Commission recovers illegal profits from securities violators, it sets up a distribution plan to return those funds to defrauded investors.  Have you ever been a recipient of funds under such a plan?  If so, would that affect your ability to be fair and impartial in this case?

37.    In the present case, you are to decide the liability of only the three defendants and one relief defendant -- Garfield M. Taylor, Benjamin C. Dalley, Randolph M. Taylor, and Reverb Enterprises, LLC -- before you in court.  There may be mention of others who are not before you in court or who are not alleged to be a defendant during this trial.  There are a variety of reasons why someone may not be present at trial, or alleged to be a defendant.  You are not to speculate about any reason.  You are to only decide the issues before you for the defendant or relief defendant before you in court based upon the evidence presented.  Is there anyone on the panel who cannot promise to do that?

38.    As you have been advised, this is a civil case.  If the individual defendants Garfield M. Taylor, Benjamin C. Dalley, and Randolph M. Taylor are found liable, it will be up to the Court to decide on the appropriate remedy, injunction, disgorgement, and/or civil penalties.  The remedy is decided by the Court alone.  Jurors can never let concerns about the remedy influence their verdict.  Do you have any concerns about your ability to decide this case without regard to considerations of the remedy?

**39.**     This case is very important to the Securities and Exchange Commission and to the defendants Garfield M. Taylor, Benjamin C. Dalley, Randolph M. Taylor, and relief defendant Reverb Enterprises, LLC alike and you must be willing to afford both sides full and fair consideration.  If you are selected to serve on this case you must be a fair and impartial juror.  Is there anything regarding you, your background, or personal circumstances that you believe will not allow you to be a fair and impartial juror in this case?

Dated:  November 29, 2012

Respectfully submitted,

/s/ Richard Hong
Richard Hong
Attorney for Plaintiff
United States Securities and Exchange Commission
100 F Street, N.E.
Washington, DC  20549
(202) 551-4431 (Hong)
Email:  hongr@sec.gov

PART I
PLAINTIFF SEC'S PROPOSED JURY INSTRUCTIONS

(GENERAL INSTRUCTIONS)

November 29, 2012

Request No. 1

## **Function of the Court**

The function of the judge is to conduct the trial of the case in an orderly, fair, and efficient manner.  The judge also must rule upon questions of law arising during the trial, and must tell you the law that applies to this case.  It is your duty to accept the law as I state it to you without questioning the wisdom of these instructions.  In other words, even if you disagree or do not understand the reasons for any of the instructions, you are bound to follow them.[1]

On these legal matters, you must take the law as I give it to you.  If any attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.[2]

---

[1] STANDARDIZED CIVIL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA  (2006 rev. ed.) ("Civil Jury Instr. D.C.") § 1.01, Instr. 1-1.

[2] 4 L. Sand, *et al.*, MODERN FEDERAL JURY INSTRUCTIONS, Instr. 71-2

Request No. 2

**<u>Function of the Jury</u>**[3]

Your function as jurors is to decide the facts.  You are the exclusive judges of the facts.
You alone determine the weight, the effect and the value of the evidence, and the believability of
the witnesses.

You should decide the facts only from a fair evaluation of all of the evidence, without
prejudice, sympathy or fear.

---

[3] Civil Jury Instr. D.C.  § 1.02, Instr. 1-2.

3

Request No. 3

## **<u>Publicity-Preliminary Statement</u>**[4]

There may be some newspaper attention given to this case, or there may be some talk about it on the radio or television.  If there is that kind of media attention during the trial, you must insulate yourselves from all information about this case, except what comes to you in this courtroom through the rules of evidence.  So, when you leave here and go to your home and pick up the paper, if you see something about the case, you must put the paper down right away.  Do not read the article.

I will also tell you to avoid listening to or watching any radio or television discussion of the case.

---

[4] 4 L. Sand, *et al.*, MODERN FEDERAL JURY INSTRUCTIONS, Instr. 71-12

Request No. 4

## **Publicity-Reminder**[5]

Let me remind you once again not to read about the case in the newspapers, watch any news concerning the case on television or listen to any radio accounts of the case.  Please be mindful of my admonition that you must limit the information you get about the case to what comes to you in the courtroom through the rules of evidence.

---

[5] 4 L. Sand, *et al.*, MODERN FEDERAL JURY INSTRUCTIONS, Instr. 71-13

Request No. 5

### **Significance of Party Designations**[6]

During the course of the trial, you [have heard] [will hear] references to the terms plaintiff and defendant.  To put it as simply as possible, the plaintiff is the person who starts a lawsuit and the defendant is the person who is sued by the plaintiff.

During your deliberations, however, you must not attach any significance in weighing the evidence to the terms plaintiff and defendant.

In other words, the fact that the plaintiff has filed a lawsuit against the defendant does not mean that the plaintiff is entitled to your verdict or that its  evidence is entitled to greater weight than the defendant's evidence.  A plaintiff must prove every element of its claim against a defendant by a preponderance of the evidence before it is entitled to prevail.

---

[6] Civil Jury Instr. D.C.  § 1.03, Instr. 1-3

Request No. 6

## **Juror's Duty to Deliberate**[7]

It is your duty as jurors to consult with one another and to deliberate expecting to reach an agreement.  You must decide the case for yourself but you should do so only after thoroughly discussing it with your fellow jurors.  You should not hesitate to change an opinion when convinced that it is wrong.  You should not be influenced to vote in any way on any question just because another juror favors a particular decision or holds an opinion different from your own. You should reach an agreement only if you can do so in good conscience.  In other words, you should not surrender your honest beliefs about the effect or weight of evidence merely to return a verdict or solely because of other jurors' opinions.

---

[7] Civil Jury Instr. D.C.  § 1.04, Instr. 1-4

Request No. 7

## **Attitude and Conduct of Jurors**[8]

Remember that you are not advocates in this matter.  You are neutral judges of the facts.

The final test of the quality of your service will lie in the verdict which you return to this

courtroom.  You will make an important contribution to the cause of justice if you arrive at a just

and proper verdict in this case.  Therefore, during your deliberations in the jury room, your

purpose should not be to support your own opinion but to determine the facts.

---

[8] Civil Jury Instr. D.C.  § 1.05, Instr. 1-5

8

Request No. 8

**Instructions to be Considered as a Whole**[9]

You must treat and consider all of these instructions as a whole.  You must not single out any particular instruction or sentence while ignoring others.  You must give each instruction equal importance and consider each one equally with all other instructions.

---

[9] Civil Jury Instr. D.C.  § 1.06, Instr. 1-6

Request No. 9

**<u>Court's Commenting on the Evidence</u>**[10]

The law permits me to comment to you about the evidence in this case.  My comments are only my opinions about the facts, and you are not bound by my opinions.  If, during the course of this trial, or the giving of these instructions, I have made or make any comment on any evidence, you are free to disregard the comment.  Remember, you are the sole and exclusive judges of all questions of fact in this case.

---

[10] Civil Jury Instr. D.C.  § 1.07, Instr. 1-7

Request No. 10

**<u>Court's Questions to Witnesses</u>**[11]

During the course of the trial, I may have asked questions of a witness, to obtain information or to bring out facts.  You should not take my questions to witnesses as any indication of my opinion about how you should determine the facts.

---

[11] Civil Jury Instr. D.C.  § 1.08, Instr. 1-8

Request No. 11

### **<u>Jury Not To Take Cue From Judge</u>**[12]

If I have said or done anything at any time during this case, including giving these instructions, which seemed to indicate my opinion on any of these matters, then I instruct you to disregard that indication.  Nothing I have said or done should influence or suggest to you that I favor any party in- this case.

I have not meant to express, or to suggest, any opinion about which witnesses should be believed, or which facts are established.

---

[12] Civil Jury Instr. D.C.  § 1.09, Instr. 1-9

Request No. 12

## **Rulings On Objections**[13]

There may have been times during the trial when a lawyer made an objection to a question asked by another lawyer or to an answer given by a witness.  It is the duty of a lawyer to make objection if the lawyer believes something improper is being done.  When I sustained an objection to

a question, the witness was not allowed to answer it.  Do not attempt to guess what the answer might have been had I allowed the question to be answered.  Similarly, when I told you to disregard a particular answer - when I ordered it stricken - you should have put that statement out of your mind, and you may not refer to that stricken answer during your deliberations.

While it may have been natural for you to become impatient with the delay caused by objections or other portions of the proceedings, you must not let your feelings in any way affect your deliberations.  Those interruptions concerned legal matters, while your job is to decide the facts. You should not be influenced by the any lawyer's objections, no matter how I ruled upon them.

---

[13] Civil Jury Instr. D.C.  § 1.10, Instr. 1-10

Request No. 13

## **Equality of Litigants-Individuals**[14]

Our system of justice requires that you decide the facts of this case in an impartial manner. You must not be influenced by bias, sympathy, prejudice or public opinion.  It is a violation of your sworn duty to base your verdict upon anything other than the evidence in the case.

In reaching a just verdict, you must consider and decide this case as an action between persons of equal standing in the community and of equal worth.  All persons stand equal before the law and must be treated as equals in this court.

---

[14] Civil Jury Instr. D.C.  § 1.11, Instr. 1-11

Request No. 14

### **<u>Evidence in the Case</u>**[15]

You may consider only the evidence properly admitted in the case.  Evidence includes the sworn testimony of witnesses, exhibits admitted into evidence, and facts stipulated and agreed to by counsel.  You may consider any facts to which all counsel have agreed or stipulated to be undisputed evidence.

---

[15] Civil Jury Instr. D.C.  § 1.13, Instr. 1-13

Request No. 15

**<u>Evidence in the Case - Judicial Notice</u>**[16]

Another type of evidence includes facts of which I take judicial notice.  I may take judicial notice of public acts, places, facts and events which I regard as matters of common knowledge.  When I take judicial notice of a particular fact, you may regard that fact as included in the evidence and proven.

---

[16] Civil Jury Instr. D.C.  § 1.14, Instr. 1-14

Request No. 16

## **<u>Inferences</u>**[17]

In arriving at your verdict, you are to consider only the evidence in the case. When you are considering the evidence, however, you are not limited solely to the statements of the witnesses. You are permitted to draw from the evidence any inferences or conclusions that reason and common sense lead you to make.

---

[17] Civil Jury Instr. D.C. § 1.15, Instr. 1-15

17

Request No. 17

## **Common Plan or Scheme**[18]

You will recall that I have admitted into evidence against defendant the acts and statements of others, because these acts and statements were committed by persons alleged to be confederates, co-conspirators, or joint venturers of the defendant.

The reason for allowing this evidence to be received has to do with the law of conspiracies or joint ventures (or common schemes).  A conspiracy or joint venture (or common scheme) is like a partnership in that every member of a conspiracy or joint venture becomes an agent for the other members in carrying out its purposes.  Therefore, the reasonably foreseeable acts, declarations, statements and omissions by one member of a conspiracy or a joint venture and in furtherance of the common purpose are deemed, under law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements and omissions.

If you find that_____ was a member of the conspiracy or joint venture, then any act or statement by any member of the conspiracy or joint venture made in furtherance of the conspiracy or joint venture may be considered against him.  This is so even if the acts were done and the statements were made in his absence and without his knowledge.  On the other hand, if the acts were done or the statements were made by someone whom you did not find was a member of the conspiracy or joint venture, or if they were not done or said in furtherance of the conspiracy or joint venture, they may be considered by you only as evidence against the person who said or did them.

---

[18] 4 L. Sand, *et al.*, MODERN FEDERAL JURY INSTRUCTIONS, Instr. 74-9; *United States v. Gewin*, 471 F.3d 197, 201 (D.C. Cir. 2006).

18

Request No. 18

### **<u>Inadmissible And Stricken Evidence</u>**[19]

It is the duty of the lawyers to object when the other side offers testimony or other materials that a lawyer believes are not properly admissible in evidence.

If, during the course of the trial, I sustained an objection by one lawyer to a question asked by the other lawyer, you are to disregard the question and you must not guess about what the answer would have been.  If a question was asked and the witness answered it, and I ruled that you should not consider the answer, then you must disregard both the question and the answer in your deliberations just as if the question and answer had never been spoken.

[Likewise, if I sustained an objection to any exhibits or ordered them stricken, then those stricken exhibits are not evidence and you must not consider them.]

---

[19] Civil Jury Instr. D.C.  § 1.16, Instr. 1-16

Request No. 19

### **Statements of Counsel**[20]

Statements and arguments of the lawyers, such as their opening statements and closing arguments, are not evidence.  They are intended only to help you understand and interpret the evidence from each party's perspective.

The questions that the lawyers ask are not evidence.  A lawyer's question that contains as assertion of a fact does not provide evidence of that fact.

---

[20] Civil Jury Instr. D.C.  § 1.17, Instr. 1-17

Request No. 20

## **<u>Jury's Recollection Controls</u>**[21]

During this case, I or the lawyers may have called your attention to certain evidence.  If you remember that evidence differently from the way I or the lawyers stated it, then you should disregard our characterization of the evidence and rely upon your own memory.

---

[21] Civil Jury Instr. D.C.  § 1.18, Instr. 1-18

Request No. 21

## **<u>Evidence Admitted Against One Party Only</u>**[22]

During this trial, there were instances when I ruled that certain evidence should be admitted against one or more of the defendants, but not against the others.

I called your attention to these instances at the time when I made the rulings.  But I would again urge you to keep in mind the distinctions I pointed out in those rulings, and their effect.  It may be difficult for you, when considering the case for or against any one party, to disregard completely evidence that was admitted only against another party.  However, regardless of the difficulty, it is your duty to consider only the evidence that has been offered against any specific party.

---

[22] Civil Jury Instr. D.C.  § 1.19, Instr. 1-19

22

Request No. 22

## Burden Of Proof[23]

The party who makes a claim has the burden of proving it.  This burden of proof means that the plaintiff must prove every element of its claim by a preponderance of the evidence.  To establish a fact by a preponderance of the evidence is to prove that it is more likely so than not so.  In other words, a preponderance of the evidence means that the evidence produces in your mind the belief that the question is more likely true than not true.

If, after considering all of the evidence, the evidence favoring the plaintiff's side of an issue is more convincing to you, and causes you to believe that the probability of truth favors the plaintiff on that issue, then the plaintiff will have succeeded in carrying the burden of proof on that issue.

The term "preponderance of the evidence" does not mean that the proof must produce absolute or mathematical certainty.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial.  That requirement does not apply to a civil case such as this and you should put it out of your mind.[24]

Whether there is a preponderance of the evidence depends on the quality, and not the quantity, of evidence.  In other words, merely having a greater number of witnesses or documents bearing on a certain version of the facts does not necessarily constitute a preponderance of the evidence.

---

[23] Civil Jury Instr. D.C.  § 1.20, Instr. 1-20 (modified) (except as otherwise indicated by other footnotes.

[24] 4 L. Sand, *et al.*, MODERN FEDERAL JURY INSTRUCTIONS, Instr. 73-2

23

If you believe that the evidence is evenly balanced, on an issue the plaintiff had to prove, then [the plaintiff has not carried the burden of proof and] your finding on that issue must be for the defendant.

On the other hand, the party with this burden of proof need prove no more than a preponderance.  So long as you find that the scales tip, however slightly, in favor of the party with this burden of proof-that what the party claims is more likely true than not true-then that element will have been proved by a  preponderance of evidence.[25]

[In this case, the defendant has asserted affirmative defenses that he must prove by a preponderance of the evidence.  When I discuss each of these defenses, I will instruct you on the defendant's burden of proof.]

---

[25] 4 L. Sand, *et al.*, MODERN FEDERAL JURY INSTRUCTIONS, Instr. 73-2

Request No. 23

## **Evidence Produced By Adversary**[26]

In determining whether any fact has been proved by a preponderance of the evidence, you should consider all the evidence bearing upon that fact, regardless of who produced it.  A party is entitled to benefit from all evidence that favors him whether he produced it or his adversary produced it.

---

[26] Civil Jury Instr. D.C.  § 1.21, Instr. 1-21

Request No. 24

## **Direct And Circumstantial Evidence**[27]

There are two types of evidence: direct and circumstantial.  Direct evidence is the direct proof of a fact, such as the testimony of an eyewitness.  Circumstantial evidence is indirect evidence of a fact which is established or logically inferred from a chain of other facts or circumstances.  For example, direct evidence of whether an animal was running in the snow might be the testimony of a person who actually saw the animal in the snow.  Circumstantial evidence might be the testimony of a person who saw the tracks of the animal in the snow, rather than the animal itself.

You may consider both types of evidence equally.  The law makes no distinction between the weight to be given either direct or circumstantial evidence.  The law does not require a greater degree of certainty for circumstantial evidence than of direct evidence.  You should weigh all the evidence in the case, both direct and circumstantial, and find the facts in accordance with that evidence.

---

[27] Civil Jury Instr. D.C.  § 1.22, Instr. 1-22

Request No. 25

## **Jury To Determine Credibility of Witnesses**[28]

In evaluating the evidence and deciding what the facts are, you must consider and weigh the testimony of all the witnesses who have appeared before you.  You are the sole judges of the credibility of the witnesses.  In other words, you alone are to determine whether to believe any witness and to what extent any witness should be believed.  If there is any conflict in the testimony between a witness's testimony and other evidence, it is your function to resolve the conflict and to determine where the truth lies.

In deciding the credibility of any witness, you may consider any matter that may have a bearing on the subject.  You may consider the appearance and the behavior of the witness on the witness stand; whether the witness impresses you as a truthful individual; whether the witness impresses you as having an accurate memory and recollection; whether the witness has any motive for not telling the truth; whether the witness had full opportunity to observe the matters about which he or she has testified; whether the witness has any interest in the outcome of this case; or whether the witness has any friendship or animosity toward other persons concerned in this case.

You may consider the reasonableness or unreasonableness, and the probability or improbability, of the testimony of a witness in determining whether to accept it as true and accurate.  You may consider whether the witness has been contradicted or corroborated by other credible evidence.

---

[28] Civil Jury Instr. D.C.  § 1.23, Instr. 1-23

27

If you believe that any witness has shown himself to be biased or prejudiced, either for or against either side in this trial, you may consider and decide whether that bias or prejudice has colored the testimony of the witness so as to affect the witness's desire and capability to tell the truth.

You should give the testimony of each witness as much weight as in your judgment it is fairly entitled to receive.

Request No. 26

**<u>Depositions As Evidence</u>**[29]

During the trial of this case, certain testimony has been read to you [or presented by videotape]. You should give to this testimony the same consideration [as to its weight and credibility,] as you give to the testimony of witnesses who testified here in court. You must not discount any testimony merely because it was read to you [or presented on videotape].

---

[29] Civil Jury Instr. D.C.  § 1.27, Instr. 1-27

Request No. 27

## **Impeachment By Prior Inconsistent Statements**[30]

The testimony of a witness may be discredited or impeached by showing that he or she has previously made statements which are inconsistent with his or her present courtroom testimony.  It is for you to decide whether a witness made a statement on an earlier occasion and whether it was in fact inconsistent with the witness's testimony in court here.

First, I will explain the rules regarding witnesses who are not parties to this case.[31]

If a witness at trial has been confronted with a prior statement which that witness made, and that prior statement is inconsistent with [his][her] testimony here in court, then you may consider the prior statement when you assess the truthfulness of the testimony [he][she] gave in court.

If the witness made the prior inconsistent statement [under oath subject to the penalty of perjury][at a deposition], then you may also treat that prior statement as evidence in this case - that is, you may treat what the witness said in that prior statement as evidence like any other evidence in this case.

If the witness [was not under oath subject to the penalty of perjury][was not at a deposition] when [he][she] made the statement, then you may not treat the prior statement as evidence of the facts in the statement.  You may consider the statement only to evaluate the witness's credibility, that is, you may use the prior statement only to determine whether to believe the witness's present testimony in court.

---

[30] Civil Jury Instr. D.C.  § 1.29, Instr. 1-29 (except as indicated by the other footnotes in this section)

[31] This sentence is added to draw a distinction between statements of non-party witnesses and statements of parties.

30

If you believe that any witness has been discredited or impeached, then you should give

his or her testimony the weight, if any, that you judge it is fairly entitled to receive.

Next, I will explain the rules regarding parties – including the defendants.  If you believe that a defendant in this case made a prior statement in any form – regardless of whether it was under oath or under penalty of perjury – you may consider that statement as evidence.[32]

---

[32] Rule 801(d)(2), Federal Rules of Evidence.

Request No. 28

## **Adopting Prior Inconsistent Statements**[33]

If a witness testifies that a prior inconsistent statement is the truth, then you may consider the prior statement both to evaluate the witness's credibility and as evidence of the truth of any fact contained in that statement.

---

[33] Civil Jury Instr. D.C.  § 1.30, Instr. 1-30

Request No. 29

**<u>Charts and Summaries</u>**[34]

The [lawyers][witnesses] have shown to you various charts and summaries to help explain the facts.  The facts in these charts and summaries come from books, records, and other documents which are in evidence in the case.  The charts or summaries themselves, however, are not evidence or proof of any facts.  If any chart or summary does not correctly reflect facts or figures shown by the evidence in the case, then you should disregard that chart or summary.

In other words, the charts or summaries are used only as a convenience; you should disregard entirely any chart or summary that does not state the truth based on the evidence.

---

[34] Civil Jury Instr. D.C.  § 1.31, Instr. 1-31

33

Request No. 30

## **Multiple Defendants**[35]

There are more than one defendant in this lawsuit.  Each defendant deserves fair consideration of his or her own separate defense.  Accordingly, your finding one defendant liable or not liable should have no effect on your decision about the liability of any other defendant. The instructions I give you govern the case as to each defendant to the same effect as if that defendant were the only one in the lawsuit.

If you should find that no defendant is liable to the plaintiff, then your verdict should be in favor of all defendants against the plaintiff.  If you should find that not all of the defendants are liable to the plaintiff, then your verdict should be in favor of the plaintiff and against only those defendants you found liable.

---

[35] Civil Jury Instr. D.C.  § 1.33, Instr. 1-33

Request No. 31

**Persons Not on Trial**

You may not draw any inference, favorable or unfavorable, to the SEC or the defendant, from the fact that any person or entity has or has not been sued by the SEC or that some person or entity is not on trial before you at the present time.  You should not concern yourself with the rights and responsibilities of other persons.  You should consider only the issues between the SEC and the defendants.[36]

---

[36] Charge by the Hon. Robert E. Keeton, *SEC v. Happ,* C.A. No. 00-12051-REK, Instruction 8-75 (D. Mass. Oct. 8, 2003).

PART II

PLAINTIFF SEC'S PROPOSED JURY INSTRUCTIONS

November 29, 2012

Request No. 32

## BACKGROUND OF THE FEDERAL SECURITIES LAWS AND THE SEC

The SEC alleges that Defendants engaged in conduct that violated three federal statutes and rules that the SEC has adopted under those statutes.  A statute is legislation that the United States Congress has enacted.  The three statutes at issue in this case are the Securities Act of 1933, the Securities Exchange Act of 1934, and the Investment Advisers Act of 1940.  I shall briefly discuss the history and purpose of these statutes to provide you with a better understanding of their purpose.

The stock market crash of 1929 led to much legislation in the area of federal regulation. Congress passed the first of these statutes, the Securities Act of 1933, to protect the investing public.  The Act prohibits fraud and requires full and fair disclosure of all important facts so that the investing public can make informed investment decisions.

When it enacted the Securities Act, Congress recognized that the purchase of securities is different from the purchase of a vegetable bought in the grocery store in that the average investor is not in a position to make a personal investigation to determine the worth, quality and value of securities.

Congress passed the second of the statutes, the Securities Exchange Act of 1934, to ensure fair dealing and to outlaw deceptive and inequitable practices by those who sell or buy securities.  Among the primary objectives of the Exchange Act is the maintenance of fair and honest securities markets.  The statute and rules under it are designed to support investor expectations that the securities markets are free from fraud and to prevent a wide variety of devices and schemes that are contrary to a climate of fair dealing.  Congress recognized that any deceptive or manipulative practice that influenced or related to trading activity

undermined the function and purpose of a free market and the integrity of securities transactions.

Congress passed the third statute, the Investment Advisers Act of 1940, to protect clients, investors, and other participants in the securities markets from fraud by investment advisers and to regulate the activities of investment advisers in order to achieve a high standard of conduct in the investment advisory industry and to promote the public's confidence in investment advisers.

In passing the securities laws, Congress allowed the SEC to establish, in the public interest and for the protection of investors, rules and regulations prohibiting certain conduct in the offer, purchase or sale of securities and in the provision of investment advisory services. These rules have the effect of law and you should treat them as such.

The anti-fraud provisions of the Securities Act, the Exchange Act and the Advisers Act, and the Rules established thereunder, are designed to control and remedy schemes to defraud. The particular sections of the Securities Act, the Exchange Act and the Advisers Act charged in this case are designed to protect investors by requiring full and truthful disclosure of all important facts in connection with the purchase, offer or sale of securities, or in the provision of investment advisory services, to prevent investors from being victimized by fraud. If the SEC believes that a person or company has violated the securities laws, it is authorized to bring a lawsuit against that person or company.

**Authority**: Based upon *United States v. Matthews*, 787 F.2d 38, 44 (2d Cir. 1986) ("there can be little question that Congress delegated to the SEC the prime responsibility for seeing to the enforcement of the federal securities laws"); *see also SEC. v. Life Partners, Inc.,* 87 F.3d 536, 555 (D.C. Cir. 1996) ("the SEC … bears primary responsibility for administering the securities laws"); adapted from 3B O'Malley, Grenig, & Lee, FEDERAL JURY PRACTICE AND INSTRUCTIONS (Civil) §162.211 (5th Ed. 2002) (Modified); 4 L. Sand, *et al.*, MODERN FEDERAL JURY INSTRUCTIONS ¶¶ 82.01, 83.01, Instructions 82-1, 82-2, 83-1, 83-2 (Civil) (2002) (modified); *SEC v. Zandford*, 535 U.S. 813, 819 (2002) ("Among Congress' objectives in

passing the [Securities Exchange] Act [of 1934] was 'to insure honest securities markets and thereby promote investor confidence' after the market crash of 1929"); *SEC v. Rind*, 991 F.2d 1486, 1488 (9th Cir. 1993) ("Congress provided the Commission with express statutory authority to administer and enforce the 1933 and 1934 Acts"); *US v. Charnay*, 537 F.2d 341, 347-49 (9th Cir. 1976) ("Congress explained that one of its primary objectives in formulating the [Securities Exchange] Act was 'to insure the maintenance of fair and honest markets' in transactions conducted on the securities exchanges").

Request No. 33

## DEFINITION OF A "SECURITY"

A security is an investment in an enterprise with the expectation of profit from the efforts of other people.  There are many types of securities, including, but not limited to, stocks, bonds and options.

Here, the securities in question are "promissory notes" issued by Garfield Taylor, Inc. ("GTI") and/or Gibraltar Asset Management Group, LLC ("GAM") to its investors. These securities will be referred to as GAM or GTI securities.


*Authority*: The definition of "security" in the Securities Exchange Act of 1934 is virtually identical to the definition found in the Securities Act of 1933.   *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 686 n.1 (1985); *Tcherepnin v. Knight*, 389 U.S. 332, 335 (1967); *SEC v. Edwards*, 540 U.S. 389, 389 (2004); 15 U.S.C. § 77b(a)(1); *Savino v. E. F. Hutton & Co., Inc.,* 507 F. Supp. 1225, 1234 (S.D.N.Y. 1981) ("common stocks and stock options that defendants purchased and sold … undoubtedly constituted 'securities' within the meaning of the federal securities laws"); *SEC v. Better Life Club of America, Inc.,* 995 F. Supp. 167, 173-74 (D.D.C. 1998) (promissory notes are investment contracts and therefore securities*).

Request No. 34

## **OVERVIEW OF THE VIOLATIONS CHARGED**

I will now instruct you on each of the SEC's claims.

First, I will instruct you about the law that you are to apply in order to determine whether any of the Defendants violated the antifraud provisions of the Exchange Act, the Securities Act or the Advisers Act.

I will then instruct you about the law governing liability for aiding and abetting that you should apply to determine whether Garfield Taylor, Benjamin Dalley, and/or Randolph Taylor substantially assisted the violation by Garfield Taylor, Inc. ("GTI") and/or Gibraltar Asset Management Group, LLC ("GAM") of the antifraud provisions of the Exchange Act.

I will then instruct you about the law that you are to apply to determine whether Garfield Taylor is liable for additional violations under the Securities Act and the Exchange Act.

Request No. 35

## THE VIOLATIONS AT ISSUE

The SEC alleges that Defendants violated multiple provisions of the federal securities laws.

First, the complaint charges Defendants Garfield Taylor and Benjamin Dalley with committing securities fraud, in violation of Section 10(b) and Rule 10b-5 of the Exchange Act.

Second, the complaint charges Defendants Garfield Taylor, Benjamin Dalley, and Randolph Taylor with aiding and abetting the violations by GAM of Exchange Act Section 10(b) and Rule 10b-5, and it further charges Defendant Garfield Taylor with aiding and abetting the violations by GTI of those same provisions.

Third, the complaint charges Defendants Garfield Taylor, Benjamin Dalley, and Randolph Taylor with committing securities fraud in violation of Sections 17(a)(l), (a)(2) and (a)(3) of the Securities Act.

Fourth, the complaint charges Defendant Garfield Taylor with control person liability for GAM and GTI's violations of Exchange Act Section 10(b) and Rule l0b-5.

Fifth, the complaint charges Defendant Garfield Taylor with selling unregistered securities in violation of Section 5(a) and (c) of the Securities Act.

Sixth, the complaint charges Defendant Garfield Taylor with effecting a transaction in, or to induce or attempt to induce a purchase or sale of any security without being without registering with the SEC or without being  associated with a registered broker-dealer, in violation of Section 15(a)(1) of the Exchange Act.

Finally, the complaint charges Defendant Garfield Taylor with violations of Section 206(1), (2), and (4) and Rule 206(4)-8 of the Advisers Act.

These are separate charges, and you need not find that any Defendant committed all of the alleged violations in order to find that he committed one or more of the alleged violations. You should consider each violation independently.

I will next instruct you about the law you are to apply in order to determine whether Defendants violated or aided and abetted violations of the Exchange Act, the Securities Act and the Advisers Act.

*Authority*:  Based upon 4 L. Sand, et al., MODERN FEDERAL JURY INSTRUCTIONS, Instr. 82-1 & 83-1 (Civil) (2011).

Request No.  36

## SECTION 10(b) AND RULE 10b-5 CLAIM

The SEC alleges that Defendants Garfield Taylor and Benjamin Dalley committed securities fraud, in violation of Section 10(b) and Ru1e 10b-5 of the Exchange Act.  This is referred as the plaintiff's "Section 10(b) claim."  On this claim, the SEC has the burden of proving each of the following elements by a preponderance of the evidence:

1.      Garfield Taylor and Benjamin Dalley did any of the following things in connection with a purchase or sale of GTI and/or GAM securities:

> (a) employed a device, scheme, or artifice to defraud;

> (b) made an untrue statement of a material fact or omitted a material fact necessary under the circumstances to keep the statements that were made from being misleading; or

> (c) engaged in any act, practice, or course of business which operated or would operate as a fraud or deceit upon any person; and

2.      that Defendant acted knowingly or recklessly; and

3.      that Defendant used, or caused to be used, means and instrumentalities of interstate commerce.

I will next explain each of these concepts in more detail.  Before I do, you should know that the SEC does not need to prove that anyone, including any investor of GTI or GAM actually relied on these Defendants' alleged fraud.  The SEC also does not need to prove that anyone suffered or would suffer any damages or harm as a result of these Defendants' alleged fraud.  You should not consider causation, reliance or harm in determining whether these Defendants committed fraud under the securities laws.

*Authority*:    Based on 4 L. Sand *et al*., MODERN JURY INSTRUCTIONS (Civil), Instr. 82-3 (2011) (omitting reliance and loss causation, which SEC need not show); *SEC v.*

9

*Simpson Capital Mgmt., Inc.*, 586 F. Supp. 2d 196, 201 (S.D.N.Y. 2008) (SEC is not required to prove investor reliance, loss causation, or damages in an action for securities fraud); *SEC v. KPMG, LLP*, 412 F. Supp. 2d 349, 375 (S.D.N.Y. 2006) (same).

Request No.  37

## **FIRST ELEMENT:  FRAUDULENT ACT**

The first element that the SEC must prove by a preponderance of the evidence is that in connection with the purchase or sale of GTI and/or GAM securities, Defendant Garfield Taylor and Benjamin Dalley did any one or more of the following:

1.  employed a device, scheme or artifice to defraud; or

2.  made an untrue statement of material fact, or omitted to state a material fact which made what was said, under the circumstances, misleading; or

3.  engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller.

It is not necessary for the SEC to establish all three types of unlawful conduct. Any one will be sufficient for a finding of liability, if you so find, but you must be unanimous as to which type of unlawful conduct you find to have been proven.

A device, scheme or artifice to defraud is merely a plan for the accomplishment of any objective.  Fraud is a general term which embraces all efforts and means that individuals devise to take advantage of others.  The law which each Defendant is alleged to have violated prohibits all kinds of manipulative and deceptive acts.

The fraudulent or deceitful conduct alleged need not relate to the investment value of the securities alleged to be involved in this case.

You need not find that each Defendant actually participated in any securities transaction if he was engaged in fraudulent conduct that was "in connection with" a purchase or sale.  The "in connection with" aspect of this element is satisfied if you find that there was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities.

Fraudulent conduct may be "in connection with" the purchase or sale of securities if you find that the alleged fraudulent conduct "touched upon" a securities transaction.

It is no defense to an overall scheme to defraud that a Defendant was not involved in the scheme from its inception or played only a minor role with no contact with the investors and purchasers of the securities in question.  Nor is it necessary for you to find that a Defendant was the actual seller of the securities.  It is sufficient if each Defendant participated in the scheme or fraudulent conduct that involved the purchase or sale of a security.  By the same token, the SEC need not prove that each Defendant personally made the misrepresentation or that he omitted the material fact. It is sufficient if the SEC establishes that a Defendant caused the misstatement to be made or the fact to be omitted and had authority or control over the making of the statement or omission.  With regard to the alleged misrepresentations and omissions, you must determine whether the statement was true or false when it was made, and, in the case of alleged omissions, whether the omission was misleading.

If you find that the SEC has established by a preponderance of the evidence that a statement was false or omitted, you must next determine whether the fact misstated or omitted was material under the circumstances.  A material fact is one that would have been significant to a reasonable investor's investment decision, that is, one that would have significantly altered the "total mix" of information available to the reasonable investor.  This is not to say that the SEC must prove that the misrepresentation would have deceived a person of ordinary intelligence. Once you find that there was a material misrepresentation or omission of a material fact, it does not matter whether the intended victims were gullible buyers or sophisticated investors, because the securities laws protect the gullible and unsophisticated as well as the experienced investor.

Nor does it matter whether the alleged unlawful conduct was successful or not, or that

Defendant Garfield Taylor or Benjamin Dalley profited or received any benefits as a result of the

alleged scheme.  Success is not an element of the violation charged.  However, if you find that

Garfield Taylor or Benjamin Dalley did profit from the alleged scheme, you may consider that in

relation to the element of knowing or reckless conduct, which I will discuss in a moment.


**Authority**:     Based on 4 L. Sand *et al.*, MODERN JURY INSTRUCTIONS (Civil), Instr. 57-21 (2012); *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011).

Request No.  38

## SECOND ELEMENT:  KNOWING OR RECKLESS CONDUCT

The second element the SEC must establish by a preponderance of the evidence to prevail on a Section 10(b) claim is that Garfield Taylor and Benjamin Dalley acted either knowingly or with reckless disregard for the truth.

To act "knowingly" means to act intentionally and deliberately, rather than mistakenly or inadvertently.

To act with "intent to defraud" in the context of securities law means to act knowingly and with the intent to deceive.

To act with "reckless disregard for the truth" means to engage in conduct which involves an extreme departure from the standards of ordinary care.  A person acts in reckless disregard if the risk is known to him, or it is obvious that an ordinary person under the circumstances would have realized the danger and taken care to avert the harm likely to follow.  A person may be reckless within the meaning of the law even though he thought himself to be careful.  But recklessness is more than mere negligence.  Reckless conduct represents grossly unreasonable, rash or intemperate behavior.

Recklessness includes conduct that presents a danger of misleading buyers or sellers that is either known to the person or so obvious that he must have been aware of it.

The question of whether a person acted with intent to defraud or with reckless disregard is a question of fact for you to determine, like any other fact question.  It is a question involving one's state of mind.

Direct proof of state of mind is almost never available, and it is not required.  Circumstantial evidence, if believed, is of no less value than direct evidence.  In either case it is plaintiff's burden to

14

prove all of the elements by a preponderance of the evidence.

***Authority***:  Based on 4 L. Sand, *et al.*, MODERN FEDERAL JURY INSTRUCTIONS (CIVIL), ¶ 82.02, Inst. 82-8 (2007); *SEC v. Steadman*, 967 F.2d 636, 641 (D.C. Cir. 1992) (recklessness "is an 'extreme departure from ordinary care, . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it'"), quoting *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1045 (7th Cir. 1977).

Request No.  39

## THIRD ELEMENT:  INTERSTATE COMMERCE

The third element the SEC must prove by a preponderance of the evidence is that an "instrumentality of interstate commerce" was used in some phase of the transaction.  The term "instrumentality of interstate commerce" means, for example, the use of the mail, telephone, fax machine, or other form of electronic communication, including e-mails.

It is not necessary that a Defendant was directly or personally involved in the use of an instrumentality of interstate commerce.  All that is necessary is that a Defendant was an active participant in the scheme and took steps or engaged in conduct that he knew or could reasonably foresee would naturally or probably result in the use of such an instrumentality.  This includes asking investors or others to use the mail, make phone calls, or send facsimiles.  The internet also is an instrumentality of interstate commerce.

Nor is it necessary that any misrepresentation or omission actually occurred during the use of the instrumentality of interstate commerce.  What is required is that the instrumentality of interstate commerce be used in some phase of the transaction.  The use of interstate commerce or the mail need not be central to the execution of the scheme, and it may even be incidental to it.  All that is required is that the use of the interstate means or the mail bears some relation to the transaction that operated as a fraud upon investors.  In fact, the actual offer or sale need not be accompanied or accomplished by the use of the instrumentality of interstate commerce, so long as a Defendant engaged in actions that are part of a transaction that operated as a fraud upon investors.

**Authority:**  *Pattern Jury Instructions:  Eleventh Circuit,* Instructions Nos. 4.1 and 4.2 (2005); 4 L. Sand *et al*., MODERN JURY INSTRUCTIONS (Civil), Instr. 82-10 (2012).

Request No.  40

## **AIDING AND ABETTING SECTION 10(b) AND RULE 10b-5  CLAIM**

Defendants Garfield Taylor, Benjamin Dalley, and Randolph Taylor are charged with aiding and abetting the violations by GAM of Exchange Act Section  10(b) and Rule 10b-5, and Defendant Garfield Taylor is further charged with aiding and abetting the violations by GTI of those same provisions. You may find a defendant liable for aiding and abetting if you find by a preponderance of the evidence that the SEC has proved three elements.

First, that GAM and/or GTI violated Section 10(b) and Rule 10b-5;

Second, that the aider and abettor provided substantial assistance to that violation;

and

Third, that the aider and abettor acted with knowledge of the fraud.

I will next explain each of these elements to you.

**Authority:**  Section 20(e) of the Exchange Act, 15 U.S.C. § 78t(e).

17

Request No.  41

**FIRST ELEMENT - PRIMARY VIOLATION - AIDING AND ABETTING SECTION 10(b) AND RULE 10b-5  CLAIM**

In order to find Benjamin Dalley and Randolph Taylor liable for aiding and abetting a violation of Section 10(b) and Rule 10b-5, you must first find that GAM, through its officers and personnel, committed a violation of these provisions. In order to find Garfield Taylor liable for aiding and abetting a violation of Section 10(b) and Rule 10b-5, you must first find that GAM and/or GTI, through their officers and personnel, committed a violation of these provisions.

I have already instructed you on the elements that the SEC must prove to establish a violation of Section 10(b) and Rule 10b-5.

Request No.  42

## SECOND ELEMENT – SUBSTANTIAL ASSISTANCE - AIDING AND ABETTING SECTION 10(b) AND RULE 10b-5  CLAIM

With regard to the second element – that the defendant provided substantial assistance – the SEC need only prove by a preponderance of the evidence that the defendant in some sort associated himself with the venture, that he participated in it as in something that he wished to bring about, and that he sought by his action to make it succeed.  The defendant's conduct does not have to have been the "proximate cause" or the only cause of the fraud.  Inaction may be a form of "substantial assistance" if you find that the silence of the defendant was intended to aid GAM and/or GTI in committing the violations.  For example, silence that fails to correct a prior false statement is a form of "substantial assistance."

**Authority:**  *SEC v. Apuzzo*, 689 F.3d 204, 206, 213 (2d Cir. 2012); *SEC v. DiBella*, No. 3:04cv1342(EBB), 2007 WL 2904211, at *11 (D. Conn. Oct. 3, 2007).

Request No. 43

## THIRD ELEMENT – STATE OF MIND - AIDING AND ABETTING SECTION 10(b) AND RULE 10b-5 CLAIM

In order to find a Defendant liable for aiding and abetting a violation of Section 10(b) and Rule 10b-5, you must find that SEC has proved by a preponderance of the evidence that he acted knowingly. I have already instructed you on what it means to act knowingly when I explained to you what "intent to defraud" in the context of securities law means.

This element of aiding and abetting is present if you find that the SEC has proved that the Defendant was aware of, or knew, that his role was part of an overall activity that was improper. You do not need to find that the aider and abettor knew or realized that the person he was assisting was violating the law. It is sufficient if you are convinced that the Defendant was aware of the improper nature of the act or acts in which the violator was engaged.

**Authority:** *See Investors Research Corp. v. SEC*, 628 F.2d 168, 178 (D.C. Cir. 1980).

Request No.  44

## SECTION 17(a) CLAIM

As I mentioned earlier, Defendants Garfield Taylor, Benjamin Dalley, and Randolph Taylor are also charged with violations of Section 17(a) of the Securities Act.

In  order for you to find a violation of Section 17(a), the SEC must prove by a preponderance of the evidence that, in the offer or sale of GAM and/or GTI securities, Defendants Garfield Taylor, Benjamin Dalley, and Randolph Taylor, directly or indirectly:

(1) employed any device, scheme or artifice to defraud, or

(2) obtained money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(3) engaged in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

To find a violation of Section 17(a), it is not necessary that the SEC prove that Garfield Taylor, Benjamin Dalley, and Randolph Taylor engaged in all three types of conduct.

The elements of a violation of Section 17(a) of the Securities Act are substantially the same as those under Section 10(b) of the Exchange Act, which I have already instructed you on.  There are, however, three exceptions that are relevant.

First,  while the SEC must establish a Defendant's state of mind to prove a violation of subsection (1) of Section 17(a), negligence is sufficient to prove a violation of subsections (2)

21

and (3) of Section 17(a).  This means that even if you find that a defendant did not violate Section 10(b) or Section 17(a)(l) because he did not act with knowledge or recklessness, you may still find that he acted negligently in violation of Sections 17(a)(2) and (3).  I will explain to you shortly what negligence means.

The second difference between Section 10(b) and Section 17(a) is that, although both provisions prohibit fraud in the sale of a security, Section 17(a) also addresses fraud in the offer of a security.  This means that a defendant can violate Section 17(a) by committing fraud in offering securities irrespective of whether any subsequent purchase of securities occurs.  If you find that the misstatement was made during the same time that securities were available for purchase, you must find that it was made "in the offer" of securities under Section 17(a).

The final difference between Section 10(b) and Section 17(a) is that to prove a violation of subsection (2) of Section 17(a), the SEC must establish that the defendant obtained money or property by means of the misstatement or omission.  In order to satisfy this element, it is sufficient for the SEC to prove that the defendant obtained money or property for those with whom he was working, while acting as their agent or, alternatively, that the defendant personally obtained money or property directly or indirectly from the fraud.

**Authority:**  Based on Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a);  4 L. Sand *et al.*, MODERN JURY INSTRUCTIONS (Civil), Instr. 82-4 (2011); *Aaron v. SEC*, 446 U.S. 680, 695-702 (1979) (negligence sufficient under Sections 17(a)(2) and (3)); *United States v. Naftalin*, 441 U.S. 768, 773 (1979) (embracing an expansive reading of Section 17(a)'s "in the offer" requirement and holding that the fraud may occur in any stage of the "entire selling process"); *SEC v. Stoker*, 2012 WL 2017736, at *6 (S.D.N.Y. June 6, 2012).

Request No. 45

## SECTION 17(a) CLAIM: NEGLIGENCE

I will now explain to you what negligence means. Negligence is different from the state of mind I previously instructed you about, which requires knowing or reckless conduct. Negligence is a less exacting standard. It consists of the failure by the defendant, conscious or otherwise, to exercise ordinary care. Ordinary care is the care that a reasonable person would use in similar circumstances. Negligence, in other words, is the failure to use reasonable care or competence.

You may find that a Defendant acted negligently with respect to any of the alleged false or misleading statements or omissions if you find he failed to exercise ordinary or reasonable care or competence in making those statements. In determining whether a Defendant was negligent, it is proper for you to consider whether he exercised reasonable care in obtaining and communicating information and whether he undertook appropriate investigation before making statements or using materially misleading statements to prospective investors who were offered or sold GAM and/or GTI securities.

**Authority**:   Based on *Pattern Jury Instructions: Eleventh Circuit*, Instruction No. 1.1; 3 O'Malley, *et al.*, Federal Jury Practice and Instructions (Civil), Instr. 120:02 (6th ed. 2011); *SEC v. Univ. Major Indus. Corp.*, 546 F.2d 1044, 1047 n.l (2d Cir. 1976) (noting negligence by definition is "inadvertent and unintended"); *Beck v. Dobrowsky*, 559 F.3d 680, 682 (7th Cir. 2009) (Posner, J.) (noting in proxy action under Exchange Act that "negligence is not a state of mind; it is a failure, whether conscious or even unavoidable (by the particular defendant, who may be below average in his ability to exercise due care), to come up to the specified standard of care."); Black's Law Dictionary (9th ed. 2009) (defining "negligence" as "[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation"); Restatement (Second) Torts (1965) § 284(b) ("negligent conduct" may be "failure to do an act which is necessary for the protection or assistance of another and which the actor is under a duty to do").

Request No.  46

## **CONTROL PERSON LIABILITY:  SECTION 20(a) CLAIM**

The SEC charges that Garfield Taylor is responsible for GTI and GAM's violations of Exchange Act Section 10(b) and Rule 10b-5 as a control person of GTI and GAM.

Section 20(a) of the Exchange Act provides that a defendant is liable as a control person if he directly or indirectly controls any other person who violates the Act and culpably participates in the violation, unless the defendant acted in good faith and did not directly or indirectly induce the act or acts constituting the violation.

To establish liability under Section 20(a), the SEC must first prove a violation of Section 10(b) and Rule 10b-5 by GTI and/or GAM, the entities that Garfield Taylor allegedly controlled.

Next, the SEC has to prove that Garfield Taylor had control over GTI and/or GAM.  The SEC can establish control by showing that Garfield Taylor possessed the power, through ownership of voting securities, by contract, or otherwise, to direct or cause the direction of GTI and/or GAM's management and policies.  The power to direct or veto the actions of GTI and/or GAM is sufficient; the SEC need not prove that Garfield Taylor actually exercised that power. Additionally, the SEC need only show that Garfield Taylor had control over GTI and/or GAM, not that either Defendant had control over the particular transaction that constituted the violation by the entity.

Finally, the SEC has to prove that Garfield Taylor knew or should have known that GTI and/or GAM was engaged in fraudulent conduct, but did not take steps to prevent it.

If you find that the SEC has established that Garfield Taylor controlled GTI and/or GAM, and knew or should have known that GTI and/or GAM was engaged in fraudulent conduct, the burden then shifts to each of them to establish by a preponderance of the evidence that he acted in

24

good faith and took precautionary measures to prevent GTI and/or GAM's violation.  If you find

that Garfield Taylor has met his burden, you must find that he is not liable as a control person under

Section 20(a) of the Exchange Act.  If you find, however, that Garfield Taylor failed to discharge

this burden, you must find that he is liable as a control person under Section 20(a).

**Authority:**      15 U.S.C. 78t(a); *Boguslavsky v . Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998)
(setting forth elements for control person liability); *SEC v. Todd*, 642 F.3d 1207, 1223 (9th
Cir. 2011) (indicia of control includes power to veto); *In re Parmalat Sec. Litig.*, 594 F.
Supp. 2d 444, 455-56 (LAK) (S.D.N.Y. 2009) (Section 20(a), requires control only of a
person or entity liable under the chapter, not of the transaction constituting the violation;
control "may be demonstrated by showing that the defendant possessed the power to direct
or cause the direction of the management and policies of a person, whether through the
ownership of voting securities, by contract, or otherwise"; "a plaintiff relying on Section
20(a) is not obliged to allege or prove a controlling person's culpable participation in the
violation"); *Dietrich v. Bauer*, 126 F. Supp. 2d 759, 765-66, 768 (S.D.N.Y. 2001) ("where
the control person 'knew or should have known that primary violator, over whom the person
had control, was engaged in fraudulent conduct, but ... did not take steps to prevent the
primary violation,' there is culpability…''; "to satisfy the requirement of good faith it is
necessary for the defendants to show that some precautionary measures were taken to
prevent" the violation)(quotations omitted).

Request No.  47

## SALE OF UNREGISTERED SECURITIES:  SECTION 5 CLAIM

The SEC also alleges that Garfield Taylor used or caused to be used the mails or facilities of interstate commerce to offer or sell a security when no registration statement had been filed with the SEC, in violation of Section 5 of the Securities Act.  In order to prove Garfield Taylor liable for this violation, the SEC must establish each of the following elements by a preponderance of the evidence:

First, that the securities which the Defendant offered or sold were not registered with the Securities and Exchange Commission;

Second, that the Defendant offered, sold or caused the securities to be offered or sold to the public; and

Third, that the Defendant directly or indirectly used or caused to be used the mails or the means and instrumentalities of interstate commerce to offer or sell the securities.

*Authority*:
   15 U.S.C. 78t(a); *SEC v. Friendly Power Co. LLC*, 49 F. Supp. 2d 1363, 1367-68 (D.D.C. 1999); 4 L. Sand *et al*., MODERN JURY INSTRUCTIONS (Civil), Instr. 57-3 (2012).

Request No.  48

**FIRST ELEMENT:  SECURITIES NOT REGISTERED**

The first element that the SEC must prove by a preponderance of the evidence is that the securities which Garfield Taylor offered or sold were not registered with the Securities and Exchange Commission.  To satisfy the first element of the violation, the SEC has introduced into evidence a certified report that a diligent search of the files of the Securities and Exchange Commission was conducted and no registration statement was found to have been filed with the Commission with respect to GTI and GAM.

*Authority*:      4 L. Sand *et al*., MODERN JURY INSTRUCTIONS (Civil), Instr. 57-4 (2012).

27

Request No.  49

## SECOND ELEMENT:  SALE OF SECURITIES

The second element which the SEC must prove by a preponderance of the evidence is that Garfield Taylor offered, sold or caused GTI and/or GAM securities to be sold to the public. A Defendant offers or sells unregistered securities if it can be shown that he was a necessary participant or a substantial factor in the offering or selling.  Section 5 of the Securities Act imposes strict liability on offerors and sellers of unregistered securities regardless of any degree of fault, negligent or intentional, on the seller's part.


**Authority:**      *SEC v. Calvo*, 378 F.3d 1211, 1212 (11th Cir. 2004); *SEC v. Friendly Power Co. LLC*, 49 F. Supp. 2d 1363, 1367-68 (D.D.C. 1999).

Request No.  50

**THIRD ELEMENT:  USE OF INTERSTATE COMMERCE**

The third element the SEC must prove by a preponderance of the evidence is that Garfield Taylor used or caused the mails or other means of interstate commerce to be used to offer or sell GTI and/or GAM securities.

In order to satisfy this element, the SEC need not prove that Garfield Taylor personally placed the material in a postal box or that he personally used the facilities of interstate commerce.  Nor is it necessary that the items sent through the mails be the promissory notes representing the securities sold.  It is sufficient to satisfy this element if you find that the Defendant caused the mails or the facilities of interstate commerce to be used to offer or sell the securities in question.

In order for you to find that the mails or interstate facilities were used to offer or sell the securities in question, you need not find that the offer was made or the sale consummated in one single mailing or use of an interstate facility.  It is sufficient if you find that the use of the mails or an interstate facility was an essential or integral step in the making of the offer or sale of the security.  Each use of the mails or an interstate facility is a separate and distinct violation.

The term "sale" means "every contract or sale or disposition of a security or interest in a security for value."  The terms "sell" and "sale" are intended to be used in a broad sense.  In determining whether a sale took place, you need not find that title to the security passed to the purchaser.

*Authority*:     4 L. Sand *et al.*, MODERN JURY INSTRUCTIONS (Civil), Instr. 57-11 (2012).

29

Request No.  51

## **SECTION 15 CLAIM**

The SEC also alleges that Garfield Taylor effected a transaction in, or to induce or attempt to induce a purchase or sale of any security without registering as a broker with the SEC, or, without being associated with a registered broker-dealer, in violation of Section 15(a)(1) of the Exchange Act.

In order to prove Garfield Taylor liable for this violation, the SEC must establish each of the following elements by a preponderance of the evidence:

First, that Defendant was a broker;

Second, that Defendant was not registered as a broker with the SEC, or, was not associated with a registered broker-dealer; and

Third, that Defendant effected any transaction in, or to induce or attempt to induce the purchase or sale of any security.

A broker is any person engaged in the business of effecting transactions in securities for the account of others.  The Commission need not establish any state of mind element.


***Authority*:**     15 U.S.C. § 78*o*(a)(1); *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1, 12 (D.D.C. 1998; *SEC v. National Executive Planners, Ltd.*, 503 F. Supp. 1066, 1073 (M.D.N.C. 1980).

30

Request No.  52

**ADVISERS ACT SECTIONS 206(1), (2) AND (4) AND
RULE  206(4)-8 CLAIM**

In addition to alleging violations of Section  1 0 (b) of the Exchange  Act and Section

17(a) of the Securities  Act, the SEC claims  that Garfield Taylor violated Sections 206(1),

(2), and  (4) of the Advisers Act and Rule 206(4)-8.  I will now describe the elements of each

of those Sections.

Request No.  53

## SECTIONS 206(1), (2) AND (4) AND RULE  206(4)-8: ELEMENTS

To prove a violation of Sections 206(1) and (2), the SEC must establish by a preponderance of evidence that Garfield Taylor, as an investment adviser, did one or more of the following:

> (I)     employed a device, scheme, or artifice to defraud any client or
>
> prospective client; or
>
> (2)     engaged in any transaction, practice, or course of business which
>
> operated or would operate as a fraud or deceit upon any client or prospective client.

For the purposes of Sections  206(1) and (2), the client is any investor or prospective investor of GTI and/or GAM.

For a violation of Section 206(4) and Rule 206(4)-8, the SEC must establish by a preponderance of the evidence that Garfield Taylor, as an investment adviser, did one or more of the following:

> (1)     made any untrue statement of a material fact to any investor or prospective investor in GTI and/or GAM securities, or omitted to state a material fact necessary to make statements made to such investors, in the light of the circumstances under which they were made, not misleading; or
>
> (2)     engaged in any act, practice, or course of business that was fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in GTI and/or GAM securities.

The elements of a violation of Sections 206(1), (2) and (4) and Rule 206(4)-8 are similar to Section  1 0 (b) of the Exchange Act and Section 17(a) of the Securities Act.  They

require a showing of a fraudulent act, misstatement, or failure to disclose, and a showing of materiality. I have already explained the meaning of those terms to you.

However, unlike Section 1 0 (b) or Section 17(a), under Section 206 of the Advisers Act, the SEC need not show that the alleged fraud was in connection with the offer, purchase, or sale of a security. It is sufficient that Garfield Taylor committed fraud with regard to GTI and GAM securities, or on investors or prospective investors in GTI and GAM securities, irrespective of whether the fraud was related to transactions in securities. The SEC need not establish that any offer, purchase or sale of a security actually occurred in connection with the Defendant's conduct under the Advisers Act.

In addition, under Sections 206(1) and (2) of the Advisers Act, an investment adviser owes a fiduciary duty to act for the benefit of their clients - here, GTI and/or GAM. This requires all investment advisors to exercise the utmost good faith in dealing with clients, to disclose all material facts, and to employ reasonable care to avoid misleading clients.

As for the required state of mind, the SEC need prove any state of mind only to establish liability under subsection (1) of Section 206. For liability under subsection (2) and (4) of Section 206 and under Rule 206(4)-8, negligence is sufficient. I have already defined the terms "knowing or reckless conduct" and "negligence" for you.

- **Authority:** Sections 206(1), (2), and (4) of the Advisers Act, and Rule 206(4)-8 thereunder, 15 U.S.C. §§ 80b-6(1), (2), (4); 17 C.F.R. 275.206(4)-8; *Goldstein v. SEC*, 451 F.3d 873, 881 and n.6 (D.C. Cir. 2006)(Sections 206(1) and (2) apply to fraud as to adviser's client, the investment company, not investors; Section 206(4) and Rule 206(4)-8 apply to statements made to investors as well as to Fund client); *SEC v. Rabinovich & Assoc.*, LP, 07 Civ. 10547 (GEL), 2008 WL 4937360, at *4 (S.D.N.Y. Nov. 18, 2008) (206(4)-8 prohibits false statements by investment adviser to investors*);*

*Transamerica Mortgage Advisers, Inc. v. Lewis*, 444 U.S. 11, 17 (1979) (through the Advisers Act, "congress intended to impose enforceable fiduciary obligations" on investment advisers); *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 383 (S.D.N.Y. 2007) ("Facts showing a violation of Section 17(a) or 10(b) by an investment adviser will also support a showing of a Section 206 violation."); *SEC v. Berger*, 244 F. Supp. 2d 180, 192 (S.D.N.Y. 2001) (same), *aff'd*, 322 F.3d 187 (2d Cir. 2003); *SEC v. DiBell*, 587 F.3d 553, 569 (2d Cir. 2009) ("an investment advisor can avoid committing fraud on its clients by disclosing material information to them"); *Aaron v. SEC*, 445 U.S. 680, 691-93, 697 (1980) (negligence sufficient for liability under Section 206(2)); *SEC v. Steadman,* 967 F.2d 636, 646-47 (D.C. Cir. 1992) (*scienter* not required for Section 206(4)); *SEC v. Gruss*, -- F. Supp. 2d --, No. 11 Civ. 2420, 2012 WL 1659142, at *15 (S.D.N.Y. May 9, 2012) (discussing the requirements for Section 206(1) and (2)).

Request No.  54

## ADVERSE INFERENCE

During the trial you heard videotaped testimony by Garfield Taylor refusing to answer certain questions on the grounds that they may tend to incriminate him.  A defendant has a constitutional right to decline to answer on the grounds that it may tend to incriminate him.  You may, but you need not, infer by such refusal that the answers would have been adverse to Garfield Taylor's interests.  A witness's invocation of the Fifth Amendment is admissible against any party, regardless of the nature of their relationship, as long as the adverse inference is trustworthy under all of the circumstances and will advance the search for truth.  Accordingly, Garfield Taylor's invocation of the Fifth Amendment is admissible against Benjamin Dalley and Randolph Taylor.

**Authority**:  *SEC v. Monterosso*, 768 F. Supp. 2d 1244, 1268 (S.D. Fla. 2011); *State Farm Mutual Automobile Insurance Co. v. Abrams*, 2000 WL 574466, at *6 (N.D. Ill., May 11, 2000) (quoting *LiButti v. United States*, 107 F.3d 110, 121 (2d Cir. 1997)).

35

Request No.  55

## **ABSENT DEFENDANT**

If you find that any defendant who failed to appear had information on any issues in this case which were peculiarly within his knowledge, then you may infer from such failure to appear that had the individual testified, his testimony would be adverse to the position of that particular defendant.

*Authority*:  *State of New York v. Hendrickson Brothers, Inc.*, 840 F.2d 1065, 1085-86 (2d Cir. 1988).

Request No.  56

## **Jury Not to Consider Relief**

You are to determine only whether the defendant is liable for violating the federal

securities laws at issue in this case.  This is not the kind of case in which the jury decides what

legal relief the plaintiff is entitled to.  That will be my job if you find the defendant liable.

Therefore, you should not concern yourselves with what kind of relief I might provide to the

plaintiff.


**Authority**: *Tull v. US*, 481 U.S. 412, 425 (1987)("the Seventh Amendment required that petitioner's demand for a jury trial be granted to determine his liability, but that the trial court and not the jury should determine the amount of penalty, if any"); *SEC v. Commonwealth Chemical Securities, Inc.*, 574 F.2d 90, 94 (2d Cir. 1978); *SEC v. Rind*, 991 F.2d 1486, 1493 (9th Cir. 1993); 15 U.S.C. § 78u-1(a) ("[t]he amount of the penalty which may be imposed...shall be determined by the court..."); *SEC v. Lawbaugh,* 359 F.Supp.2d 418, 423 n. 2 (D. Md. 2005)(neither disgorgement or civil penalties constitute damages).

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,**<br><br>    **Plaintiff,**<br><br>      **v.**<br><br>**GARFIELD TAYLOR, INCORPORATED, GIBRALTAR ASSET MANAGEMENT GROUP, LLC, GARFIELD M. TAYLOR, BENJAMIN C. DALLEY, JEFFREY A. KING, RANDOLPH M. TAYLOR, MAURICE G. TAYLOR,** and **WILLIAM B. MITCHELL,**<br><br>    **Defendants,**<br><br>      **and**<br><br>**THE KING GROUP, LLC, MARKETING AND FINANCIAL CONSULTANTS, INC.,** and **REVERB ENTERPRISES, LLC,**<br><br>    **Relief Defendants.** | **Case No. 1:11-CV-02054-RLW**<br><br>**Jury Trial Demanded** |

## PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
## PROPOSED JURY VERDICT FORM

We, the jury, unanimously find as follows on the claims asserted by Plaintiff Securities and Exchange Commission:

**A.      Defendant Garfield M. Taylor**

1.      Did Garfield Taylor violate Section 10(b) and Rule 10b-5 of the Exchange Act?

_____ Yes _____ No

2.      Did Garfield Taylor aid and abet GTI or GAM's violations of Section 10(b) and Rule 10b-5 of the Exchange Act?

_____ Yes _____ No

3.      Did Garfield Taylor violate Section 17(a)(1) of the Securities Act?

_____ Yes _____ No

4.      Did Garfield Taylor violate Section 17(a)(2) of the Securities Act?

_____ Yes _____ No

5.      Did Garfield Taylor violate Section 17(a)(3) of the Securities Act?

_____ Yes _____ No

6.      Was Garfield Taylor responsible as a "control person" for GTI and GAM's violations of Section 10(b) and Rule l0b-5 of the Exchange Act?

_____ Yes _____ No

7.      Did Garfield Taylor violate Section 5 of the Securities Act?

_____ Yes _____ No

8.      Did Garfield Taylor violate Section 15(a)(1) of the Exchange Act?

_____ Yes _____ No

9.      Did Garfield Taylor violate Section 206(1) of the Investment Advisers Act?

_____ Yes _____ No

10.    Did Garfield Taylor violate Section 206(2) of the Investment Advisers Act?

        _____ Yes _____ No

11.    Did Garfield Taylor violate Section 206(4) and Rule 206(4)-8 of the Investment

Advisers Act?

        _____ Yes _____ No

**B.    <u>Defendant Benjamin C. Dalley</u>**

1.    Did Benjamin Dalley violate Section 10(b) and Rule 10b-5 of the Exchange Act?

        _____ Yes _____ No

2.    Did Benjamin Dalley aid and abet GAM's violations of Section 10(b) and Rule 10b-5 of

the Exchange Act?

        _____ Yes _____ No

3.    Did Benjamin Dalley violate Section 17(a)(1) of the Securities Act?

        _____ Yes _____ No

4.    Did Benjamin Dalley violate Section 17(a)(2) of the Securities Act?

        _____ Yes _____ No

5.    Did Benjamin Dalley violate Section 17(a)(3) of the Securities Act?

        _____ Yes _____ No

**C.    <u>Defendant Randolph M. Taylor</u>**

1.    Did Randolph Taylor aid and abet GAM's violations of Section 10(b) and Rule 10b-5 of

the Exchange Act?

        _____ Yes _____ No

2.      Did Randolph Taylor violate Section 17(a)(1) of the Securities Act?

_____ Yes _____ No

3.      Did Randolph Taylor violate Section 17(a)(2) of the Securities Act?

_____ Yes _____ No

4.      Did Randolph Taylor violate Section 17(a)(3) of the Securities Act?

_____ Yes _____ No

Date: _____                    _____
                                        Signature of Foreperson