UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GARFIELD TAYLOR, INCORPORATED, *et al.*,<br><br>    Defendants and Relief Defendants. | Case No. 1:11-CV-02054-RLW |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
MEMORANDUM IN SUPPORT OF ENTRY OF PROPOSED FINAL
JUDGMENTS AS TO DEFENDANTS GARFIELD M. TAYLOR
AND MAURICE G. TAYLOR**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ............................................................................ 2

FACTUAL BACKGROUND ................................................................................. 6

ARGUMENT ........................................................................................................... 7

    I.    Permanent Injunctions Against Garfield Taylor Should be Issued ........... 7

    II.    Garfield Taylor and Maurice Taylor's Ill-Gotten Gains Should be Disgorged ............................................................................................... 9

    III.    Prejudgment Interest as to Garfield Taylor and Maurice Taylor be Assessed ................................................................................................. 11

    IV.    The Court Should Impose a Substantial Civil Penalty for Garfield Taylor and Maurice Taylor ..................................................................... 12

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*SEC v. Bear Stearns*, 626 F.Supp.2d 402 (S.D.N.Y. 2009) .......... 13

*SEC v. Cavanagh*, 155 F.3d 129 (2d Cir.1998) .......... 8

*SEC v. Clifton*, 700 F.2d 744 (D.C. Cir. 1983) .......... 8

*SEC v. Daly*, 572 F. Supp. 2d 129 (D.D.C. 2008) .......... 14

*SEC v. First City Fin. Corp., Ltd.*,
   890 F.2d 1215 (D.C. Cir. 1989) .......... 8, 9, 10

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir.1996) .......... 9, 10

*SEC v. Kenton Capital, Ltd.*, 69 F.Supp.2d 1 (D.D.C.1998) .......... 14

*SEC v. Lawbaugh,* 359 F.Supp.2d 418, 421–22 (D. Md.2005) .......... 14

*SEC v. Levine*, 517 F. Supp. 2d 121 (D.D.C. 2007) .......... *passim*

*SEC v. Manor Nursing Ctrs.*, 458 F.2d 1082 (2d Cir. 1972) .......... 8, 10

*SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801 (2d Cir.1975)). .......... 8

*SEC v. Shapiro*, 494 F.2d 1301 (2d Cir. 1974) .......... 7

*SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir. 1987) .......... 10

*SEC v. Zwick*, No. 03 Civ. 2742 (JGK), 2007 WL 831812
   (S.D.N.Y. Mar. 16, 2007) .......... 7

## STATUTES, RULES AND REGULATIONS

Securities Act of 1933

    Section 5(a) [15 U.S.C. § 77e(a)] .......... 3, 5

    Section 5(c) [15 U.S.C. § 77e(c)] .......... 3, 5

Section 17(a) [15 U.S.C. § 77q(a)] ............................................................... 3, 4

Section 20(b) [15 U.S.C. § 77t(b)] ..................................................................... 7

Section 20(d) [15 U.S.C. § 77t(d)] ............................................................... 5, 6

Section 20(d)(1) [15 U.S.C. § 77t(d)(1)] ......................................................... 12

Section 20(d)(2)(A) [15 U.S.C. § 77t(d)(2)(A)] ............................................. 15

Securities Exchange Act of 193

Section 10(b) [15 U.S.C. § 78j(b)] ........................................................... 3, 4, 5

Section 15(a) [15 U.S.C. § 78o(a)] .............................................................. 3, 5

Section 20(a) [15 U.S.C. § 78t(a)] ........................................................... 3, 4, 5

Section 21(d)(3) [15 U.S.C. § 78u(d)(3)] ........................................................ 12

Rule 10b-5 [17 C.F.R. § 240.10b-5] ......................................................... 3, 4, 5

Investment Advisers Act of 1940

Section 206(1) ................................................................................................ 3, 5

Section 206(2) ................................................................................................ 3, 5

Section 206(4) ................................................................................................ 3, 5

Rule 206(4)-8 .................................................................................................. 3, 5

**OTHER**

H.R. Rep. 98-355, at 7 (1983) reprinted in
    1984 U.S.C.C.A.N. 2274, 2280 ........................................................................ 9

H.R. Rep. 101-616 (1990) *reprinted in* 1990 WL 256464 ........................... 13

S. Rep. 101-337 (1990) *reprinted in* 1990 WL 263550 ............................... 13

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES SECURITIES AND EXCHANGE COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**GARFIELD TAYLOR, INCORPORATED,** *et al.,*<br><br>**Defendants and Relief Defendants.** | Case No. 1:11-CV-02054-RLW |

**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM IN SUPPORT OF ENTRY OF PROPOSED FINAL JUDGMENTS AS TO DEFENDANTS GARFIELD M. TAYLOR AND MAURICE G. TAYLOR**

Plaintiff Securities and Exchange Commission (the "Commission" or "SEC") respectfully moves for entry of Final Judgments against Defendants Garfield M. Taylor ("Garfield Taylor") and Maurice G. Taylor ("Maurice Taylor") in the form submitted herewith based on the Court's December 11, 2012 ruling on summary judgment as to Garfield Taylor and the proposed bifurcated settlement with Maurice Taylor.

1

## **PRELIMINARY STATEMENT**

This SEC enforcement action involves a Ponzi scheme and unregistered securities offering. The SEC's Complaint alleged that Garfield Taylor, operating through two entities that he controlled – Defendants Garfield Taylor, Incorporated ("GTI") and Gibraltar Asset Management Group, LLC ("GAM") – defrauded over 130 investors, primarily middle-class residents and charitable organizations in the Washington, D.C. metropolitan area, of more than $27 million from at least 2005 until 2010. Garfield Taylor, through GTI and GAM, lured his targets into investing in promissory notes issued by GTI and GAM by persuading them, through material misrepresentations and omissions, that they could earn above-market rates of return (generally around 20% annually) with little or no risk through a "covered call" investment strategy (a strategy of writing or selling call options while holding the underlying security) and principal protection techniques that Garfield Taylor falsely claimed to be using.

The Complaint further alleged that Garfield Taylor orchestrated the frauds with the assistance of, among others, Maurice Taylor, Garfield Taylor's brother. More specifically, the SEC alleged that Maurice Taylor, as one of GAM's founding owners and its chief investment officer, participated in the fraudulent scheme. Maurice Taylor was a member of the GAM inner circle, which helped develop GAM's marketing materials to investors and potential investors. These

marketing materials were riddled with materially false and misleading statements. Maurice Taylor also traded investor assets by purchasing high-risk naked put and call options. Finally, Maurice Taylor spoke to investors about GAM's purported covered call strategy. Maurice Taylor pocketed more than $460,000 from Garfield Taylor, GTI and GAM from 2007 to 2010.

Accordingly, the SEC alleged that Garfield Taylor (i) violated Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 (the "Securities Act"); (ii) violated Sections 10(b) and 15(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder; (iii) aided and abetted violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, (iv) violated Section 10(b) of the Exchange Act and Rule 10b-5 as a "controlling person" within the meaning of Section 20(a) of the Exchange Act; (iv) and violated Sections 206(1), 206(2) and 206(4) of the Investment Advisers Act of 1940 (the "Advisers Act") and Rule 206(4)-8 thereunder. As to Maurice Taylor, the SEC alleged that he violated Section 17(a) of the Securities Act.

In July 2012, Maurice Taylor agreed to a "bifurcated settlement" with the SEC. *See* Exhibit 1 (Consent of Maurice Taylor, attached hereto). He consented to a permanent injunction as to the Section 17(a) violation, but left for this Court's determination the amount of disgorgement, prejudgment interest and civil penalties that he would be ordered to pay. For purposes of such determination, Maurice

3

Taylor agreed that he "will be precluded from arguing that he did not violate the federal securities laws as alleged in the Complaint" and that "the allegations of the Complaint shall be accepted as and deemed true by the Court." Consent of Maurice Taylor ¶ 3 at 2 (Exhibit 1).

After a hearing on December 11, 2012, the Court granted the SEC's motion for summary judgment on all the claims against Garfield Taylor. *See* December 13, 2012 Order Granting the SEC's Motion for Summary Judgment (Exhibit 2). The Court found that Garfield Taylor committed securities fraud violations by orchestrating a Ponzi scheme and unregistered securities offering in which numerous investors in the Washington, D.C. metropolitan area were defrauded out of millions of dollars from at least 2005 until 2010. Notably, the Court ruled that Garfield Taylor violated Section 10(b) of the Exchange Act and Rule 10b-5 as a "controlling person" within the meaning of Section 20(a) of the Exchange Act.

The SEC seeks a Final Judgment awarding the following injunctive and monetary relief against Garfield Taylor:

1. A permanent injunction prohibiting Garfield Taylor from committing future violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a);

2. A permanent injunction prohibiting future violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5;

3. A permanent injunction prohibiting future violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, as a "controlling person" in connection with such violations;

4. A permanent injunction prohibiting future violations of aiding and abetting violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5;

5. A permanent injunction prohibiting future violations of Section 5(a) and (c) of the Securities Act, 15 U.S.C. §§77e(a) and (c);

6. A permanent injunction prohibiting future violations of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a);

7. A permanent injunction prohibiting future violations of Sections 206(1), 206(2) and 206(4) of the Advisers Act and Rule 206(4)-8 thereunder;

8. An order that Garfield Taylor pay disgorgement of his ill-gotten gains in the amount of approximately $14,236,804, plus prejudgment interest in the amount of approximately $2,946,257.66, for his fraudulent conduct in connection with GTI;

9. An order that Defendant Garfield Taylor pay disgorgement of his ill-gotten gains in the amount of approximately $9,367,783, plus prejudgment interest in the amount of approximately $826,460.97, for his fraudulent conduct in connection with GAM; and

10. An order that Defendant Garfield Taylor pay a substantial civil penalty, up to "the gross amount of pecuniary gain" that he obtained through GTI and GAM, pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act.

As to Maurice Taylor, the SEC seeks a Final Judgment awarding the following monetary relief against him:

1. An order that Defendant Maurice Taylor pay disgorgement of his ill-gotten gains in the amount of approximately $463,785, plus prejudgment interest in the amount of approximately $50,682.50, for his fraudulent conduct in connection with the GAM fraudulent scheme; and

2. An order that Defendant Maurice Taylor pay a substantial civil penalty, up to "the gross amount of pecuniary gain" that he obtained through GTI and GAM, pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d).

## FACTUAL BACKGROUND

The relevant facts and evidence with respect to Garfield Taylor can be found in the SEC's Statement of Material Facts as to Which There Is No Genuine Issue in Support of Its Motion for Summary Judgment, which is incorporated herein by reference and is attached hereto as Exhibit 2. As this Court found on December 11, 2012, the SEC's Statement of Material Facts are not genuinely disputed by Garfield Taylor.

The relevant facts with respect to Maurice Taylor can be found in the SEC's Complaint, which is also incorporated herein by reference and is attached hereto as Exhibit 3.

The Commission, however, will set forth the specific facts and/or evidence in support of this Motion in the Argument section below.

## ARGUMENT

### I. Permanent Injunctions Against Garfield Taylor Should be Issued.

Section 20(b) of the Securities Act authorizes the Court, upon a "proper showing," to order "a permanent or temporary injunction or restraining order" prohibiting "any acts or practices which constitute or will constitute a violation of the provisions of this title, or of any rule or regulation prescribed under authority thereof." 15 U.S.C. § 77t(b). A district court has broad discretion to enjoin future violations of the federal securities laws when there is a reasonable likelihood that, unless enjoined, the defendant will continue to violate the securities laws. *SEC v. Levine*, 517 F. Supp. 2d 121, 147 (D.D.C. 2007).

Injunctions are an important tool in the enforcement of the securities laws. As stated in *SEC v. Shapiro*, 494 F.2d 1301, 1309 (2d Cir. 1974), "[t]he SEC cannot keep constant surveillance over" a defendant. An injunction helps ensure a defendant will avoid future violations. Indeed, courts have found permanent injunctions, like the injunctions provided for the proposed Final Judgments, proper. *E.g., SEC v. Zwick*, No. 03 Civ. 2742 (JGK), 2007 WL 831812, at 19 (S.D.N.Y. Mar. 16, 2007) (citing *SEC v. Manor Nursing Ctrs.*, 458 F.2d 1082, 1103 (2d Cir. 1972)). This is because such injunctions "protect the public by informing potential investors that a certain person has violated SEC rules in the past and by reminding

defendants that they must obey the law in the future." *SEC v. Clifton*, 700 F.2d 744, 748 (D.C. Cir. 1983).

In determining whether a proper showing has been made for an injunction, a court may examine the level of the defendant's *scienter*, whether the violations were systematic or isolated occurrences, whether the defendant has accepted responsibility and whether, because of his occupation, the defendant might have an enhanced opportunity to commit further securities law violations. *SEC v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1228 (D.C. Cir. 1989); *SEC v. Cavanagh*, 155 F.3d 129, 135 (2d Cir.1998). Fraudulent past conduct gives rise to an inference of continued violations. *Levine*, 517 F. Supp. 2d at 147 (citing *Manor Nursing Ctrs., Inc.*, 458 F.2d at 1100). There is no requirement that the SEC demonstrate irreparable injury or lack of an adequate remedy at law. *Id.* (citing *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 808 (2d Cir.1975)).

Here, the above factors weigh heavily in favor of the issuance of permanent injunctions against Garfield Taylor. Rather than committing isolated, short-term violations, Garfield Taylor knowingly orchestrated a multi-year Ponzi scheme and offering fraud to sell risky, unregistered securities through a countless web of lies and defrauded more than 130 investors, including charitable organizations, of more than $20 million. Moreover, Garfield Taylor, who holds an MBA degree and possesses superficially attractive experience in the financial and investment

profession will likely have further opportunities to commit additional securities law violations. Finally, Garfield Taylor has not accepted responsibility or shown contrition for his actions; rather, he vehemently claimed that he did nothing wrong at the December 11, 2012 summary judgment hearing.

## II. Garfield Taylor and Maurice Taylor's Ill-Gotten Gains Should be Disgorged.

Congress expressly recognized the Commission's right to disgorgement of ill-gotten gains. "Once the equity jurisdiction of a Court has been invoked on a showing of a securities violation, the Court possesses the necessary power to fashion an appropriate remedy. Thus, the Commission may request that the Court order certain equitable relief, such as the disgorgement (giving up) of illegal profits." H.R. Rep. 98-355, at 7 (1983) reprinted in 1984 U.S.C.C.A.N. 2274, 2280. This Court has power to order the defendants to disgorge fully the ill-gotten gains of their fraudulent activities. *Levine*, 517 F. Supp. 2d at 128 (citing *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474 (2d Cir.1996) (court has "broad equitable power to fashion appropriate remedies, including ordering that culpable defendants disgorge their profits")).

Disgorgement is an equitable remedy designed to deprive a wrongdoer of his unjust enrichment and to deter others from violating federal securities laws. *SEC v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1230 (D.C. Cir. 1989). "The

effective enforcement of the federal securities laws requires that the SEC be able to make violations unprofitable." *Manor Nursing*, 458 F.2d at 1103-04; *SEC v. Tome*, 833 F.2d 1086, 1096 (2d Cir. 1987) ("paramount purpose" of "disgorgement is to make sure that wrongdoers will not profit from their wrongdoing").

The district court has broad discretion in calculating the amount to be disgorged. *First Jersey*, 101 F.3d at 1474-75. The Commission need establish only a reasonable approximation of profits causally connected to the violation. *SEC v. Levine*, 517 F. Supp. 2d at 128 (citing *First Jersey Sec.*, 101 F.3d at 1475). The burden then shifts to defendants to demonstrate that the disgorgement figure is not a reasonable approximation. *Id.* "Any risk of uncertainty in calculating disgorgement should fall on the wrongdoer[s] whose illegal conduct created that uncertainty." *Id.* (citing *First Jersey Sec.*, 101 F.3d at 1475); *First City Fin.* at 1232.

As demonstrated through the attached Declaration of Enforcement Division accountant Donato Furlano (Exhibit 4), Garfield Taylor (through GTI and GAM) and Maurice Taylor received substantial amounts of investor money from their involvement in the fraudulent scheme. Garfield Taylor obtained, through a massive fraud scheme he orchestrated, more than $20 million for GTI and GAM. Indeed, the SEC demonstrated in its Motion for Summary Judgment that much of the investor money was obtained directly through Garfield Taylor-driven

10

Case 1:11-cv-02054-RLW Document 80-1 Filed 12/21/12 Page 15 of 20

presentations and pitches to investors. Maurice Taylor assisted in developing GAM's misleading marketing materials and traded GAM investor funds. Maurice Taylor was paid up to 40% of any trading profits that he generated and was paid "owners distributions" from Garfield Taylor.

Accordingly, the documented calculations by Mr. Furlano, the SEC's Enforcement Division accountant, of Garfield Taylor's and Maurice Taylor's ill-gotten gains are as follows: approximately $14,236,804 for GTI; approximately $9,367,783 for GAM; and approximately $463,785 for Maurice Taylor. These calculations of the ill-gotten gains provide a firm basis – far beyond the "reasonable approximation" courts require – for the disgorgement amounts the SEC requests for Garfield Taylor and Maurice Taylor.

### III. **Prejudgment Interest as to Garfield Taylor and Maurice Taylor Should be Assessed.**

Disgorgement includes prejudgment interest to enable the Commission to recover the full amount of the defendants' unjust enrichment and to provide the possibility of complete compensation to the defrauded investors. *SEC v. Levine*, 517 F. Supp. 2d at 141. To preclude defendants from enjoying an interest-free loan on their illicitly-obtained gains, the courts require them to pay interest on the amounts they disgorge. *Id.*

In this case, the SEC requests prejudgment interest from Garfield Taylor and Maurice Taylor (calculated under the rates of interest that the Internal Revenue Service applies to tax underpayments and refunds) from the date of their participation in the fraudulent scheme to April 30, 2012. Furlano Decl. at ¶ 11 at 4. Courts have approved such use of the IRS underpayment rate in connection with disgorgement. *Levine*, 517 F. Supp. 2d at 141. Calculations for prejudgment interest for Garfield Taylor and Maurice Taylor, undertaken by Mr. Furlano, are attached. *See* Furlano Decl. at ¶ 11 at 4 (Exhibits D-L attached to the Declaration). The respective prejudgment interest amounts are as follows: $4,325,797.07 (for Garfield Taylor) and $50,682.50 (for Randolph Taylor). *Id.* at ¶ 11 at 4.

## IV. The Court Should Impose a Substantial Civil Penalty on Garfield Taylor and Maurice Taylor.

Congress incorporated penalties into the securities laws in the Securities Law Enforcement Remedies Act of 1990 (the "Remedies Act").[1] In enacting the Remedies Act, Congress explained its purpose in the following terms:

> Since disgorgement merely requires the return of wrongfully obtained profits, it does not impose any meaningful economic cost on the law violator. The Committee, therefore, concluded that authority to seek or impose substantial money penalties, in addition to the disgorgement of profits, is necessary for the deterrence of securities law violations that otherwise would provide great financial returns to the violator.

---

[1] The Remedies Act is codified at Securities Act Section 20(d)(1) and Exchange Act Section 21(d)(3). 15 U.S.C. §§ 77t(d)(1), 78u(d)(3).

12

S. Rep. 101-337 (1990) *reprinted in* 1990 WL 263550 (Leg. Hist.). The House Report struck the same chord: "Disgorgement merely requires the return of wrongfully obtained profits; it does not result in any actual economic penalty or act as a financial disincentive to engaging in securities fraud." H.R. Rep. 101-616 (1990) *reprinted in* 1990 WL 256464 (Leg. Hist.).

Courts evaluate several factors when deciding the amount of a penalty, including:

> (1) the egregiousness of the violations; (2) a defendant's scienter; (3) the repeated nature of the violations; (4) a defendant's failure to admit wrongdoing; (5) whether a defendant's conduct created substantial losses to others; (6) a defendant's lack of cooperation with authorities; and (7) whether the penalty should be reduced due to defendant's financial condition.

*SEC v. Bear Stearns*, 626 F.Supp.2d 402, 407 (S.D.N.Y. 2009).

Given the egregiousness, intentionality, and scope of his misconduct, the Commission respectfully suggests that Garfield Taylor qualifies for a third-tier penalty (the highest) under Securities Act Section 20(d)(2)(A), which provides that the penalty "shall not exceed the greater of" $150,000 per violation for an individual defendant who caused substantial losses or risk of losses to others or "the gross amount of pecuniary gain" that the defendant received. 15 U.S.C. § 77t(d)(2)(A) (2009). The gross amount of Garfield Taylor's pecuniary gain

received from the Ponzi scheme and unregistered offering is $27,377,305.63 (from $14,236,804, along with prejudgment interest in the amount of approximately $2,946,257.66, through GTI; approximately $9,367,783, along with prejudgment interest in the amount of approximately $826,460.97, through GAM).

Garfield Taylor's long-running and repeated securities violations not only created a risk of substantial investors losses, but, in fact, resulted in more than $20 million in losses while Garfield Taylor and his co-defendants enjoyed the fruits of their fraudulent scheme. *See SEC v. Daly*, 572 F. Supp. 2d 129, 133 (D.D.C. 2008) (imposing third-party penalty where millions of dollars of losses resulted); *SEC v. Kenton Capital, Ltd.*, 69 F.Supp.2d 1, 17 (D.D.C.1998) (imposing third-tier penalties where defendants solicited investors for a trading program that they had not thoroughly investigated); *SEC v. Lawbaugh,* 359 F.Supp.2d 418, 421–22, 426 (D. Md. 2005) (imposing a third-tier penalty where defendant materially misstated his company's financial condition and disseminated false account statements).

Though more limited in scope than his brother's, Maurice Taylor's securities violations were egregious, repetitive, and carried a high degree of scienter. The Commission also respectfully suggests that Maurice Taylor qualifies for some type of a third-tier penalty (the highest) under Securities Act Section 20(d)(2)(A). As discussed, the penalty "shall not exceed the greater of" $150,000 per violation for a defendant who caused substantial losses or risk of losses to others or "the gross

amount of pecuniary gain" that the defendant received. 15 U.S.C. § 77t(d)(2)(A) (2009). Maurice Taylor caused or created a risk of substantial losses to investors through his multi-year conduct. The gross amount of Maurice Taylor's pecuniary gain from the Ponzi scheme and unregistered offering is approximately $514,467.50.

Under these circumstances, a substantial penalty should be imposed for both Garfield Taylor and Maurice Taylor.

## CONCLUSION

For the reasons set forth above, the SEC respectfully requests that the Court enter the attached proposed Final Judgments as to Garfield Taylor and Maurice Taylor.

Dated: December 21, 2012             Respectfully submitted,

/s/ Richard Hong
Richard Hong
Attorney for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC  20549
(202) 551-4431 (Hong)
Email:  hongr@sec.gov

Of Counsel:

Jennifer S. Leete (D.C. Bar No. 446067)
Richard E. Johnston
Sarah L. Allgeier (D.C. Bar No. 990308)

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was sent via e-mail and first class mail on December 21, 2012, to the following:

Mr. Garfield M. Taylor
211 Oak Knoll Terrace
Rockville, MD 20850
gterica@aol.com

Mr. Maurice G. Taylor
16904 Federal Hill Court
Bowie, MD 20716
cybertradermoe@comcast.net; and

/s/ Richard Hong
Counsel for Plaintiff SEC