# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND | : | |
| EXCHANGE COMMISSION, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 11-2054 (RC) |
| | : | |
| v. | : | Re Documents No.: 32, 80 |
| | : | |
| GARFIELD TAYLOR, INC., *et al.* | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### GRANTING PLAINTIFF'S REQUEST FOR CIVIL MONETARY PENALTIES AGAINST CERTAIN DEFENDANTS AND PLAINTIFF'S MOTION FOR ENTRY OF PROPOSED FINAL JUDGMENT

Pending before the Court are Plaintiff United States Securities and Exchange Commission's ("the Commission") request that the Court assess civil monetary penalties against defaulted Defendants Garfield Taylor, Inc. ("GTI"), Gibraltar Asset Management Group, LLC ("GAM"), and Jeffrey A. King ("King") (ECF No. 32) and the Commission's motion for entry of a proposed final judgment as to Defendant Garfield M. Taylor ("Taylor") (ECF No. 80). For the reasons set forth below, the Court will grant the request and motion.

This case involves a Ponzi scheme which the Commission alleged defendant Taylor operated primarily through two entities he controlled: GTI and GAM.[1] Broadly speaking, Taylor, through GTI and GAM, persuaded over 130 individuals and charitable organizations to invest in promissory notes that Taylor claimed would earn above-market interest rates and carry

---

[1] This case was stayed pending Defendant Garfield Taylor's criminal proceedings. Taylor pleaded guilty to securities fraud on March 6, 2014, and the stay was lifted on July 28, 2015 after final judgment was entered in his criminal case. *See* Order Grant'g Pl.'s Mot. to Lift Stay, ECF No. 99.

little or no risk.  The Commission further alleged that King assisted Taylor in the fraud and that another entity, Relief Defendant The King Group, LLC ("TKG"), unlawfully received proceeds from the scheme.  The Court previously granted orally the unopposed default judgments against GTI, GAM, TKG, and King.  *See* Minute Entry of Sept. 17, 2012.  The Commission's proposed default judgments did not specify a particular amount to be assessed as a civil penalty as to each defendant, however, and at the September 17, 2012 Post-Discovery Status Conference the Court took the matter under advisement.  The Commission requested that the Court impose a "substantial penalty" against GTI, GAM, and King, *see* Pl.'s Mem. Supp. Mot. Default J. at 15–17, ECF No. 32–1, but did not recommend a specific amount either in the memorandum supporting its motion or on the record at the September 17, 2012 status conference.[2]  The defendants have defaulted and the Commission's motion is thus uncontested.

The Commission requested that the Court impose civil monetary penalties under Section 20(d) of the Securities Act, which allows the court to "impose, upon a proper showing, a civil penalty to be paid by the person who committed" a violation of the Securities Act.  15 U.S.C. § 77t(d)(1).  The civil penalty is intended to punish the violator and to deter future violations of the Act.  *SEC v. One or More Unknown Traders in the Common Stock of Certain Issuers*, 825 F. Supp. 2d 26, 33 (D.D.C. 2010).  The statute establishes three tiers of penalties.  The third, and most severe, is available if the violation(s) "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons."  15 U.S.C. § 77t(d)(2)(C).

---

[2] Plaintiff does not seek civil monetary penalties against Relief Defendant TKG. Therefore, in line with the Court's previous order, Plaintiff's Motion for Default Judgment is granted and the proposed Final Judgment will issue.

The Court will apply tier three penalties to each defendant. "The defendants, by virtue of their default, have conceded the allegations against them." *One or More Unknown Traders*, 825 F. Supp. 2d at 33. Those allegations establish that the defendants assisted in a scheme to defraud over 130 investors, including middle-class individuals and charitable organizations, of over $27 million in investments through the use of promissory notes that included material misrepresentations and omissions. Taking these allegations as true, the Commission has shown that the scheme involved both the deliberate or reckless disregard of statutory requirements and resulted in substantial losses. *See, e,g.*, *SEC v. Blackout Media Corp.*, No. 09 Civ. 5454, 2012 WL 4051951, at *2 (S.D.N.Y. Sept. 14, 2012) (repeated misrepresentations supported application of tier-three penalties); *One or More Unknown Traders*, 825 F. Supp. 2d at 31, 33–34 (applying tier-three penalties where defendants realized ill-gotten profits of over $780,000).

Under tier three, the court may impose a penalty for each violation that is not to exceed the greater of: (i) $150,000 for a natural person or $725,000 for any other person, including a corporate entity; or (ii) the gross amount of pecuniary gain to the defendant as a result of the violation. 15 U.S.C. § 77t(d)(2)(C); *see also* 17 C.F.R. § 201.1004 (2009) (adjusting for inflation the statutorily-fixed amounts). The amount of the penalty is to be determined "by the court in light of the facts and circumstances" of the particular case. 15 U.S.C. § 77t(d)(2)(A). To determine the amount of the penalty, courts often consider the following factors: "(1) the egregiousness of the defendant's conduct; (2) the degree of scienter; (3) whether the conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to demonstrated current and future financial condition." *SEC v. Milan Grp., Inc.*, No. 11-2132, 2015 WL 5076971, at *3 (D.D.C. Aug. 27, 2015). The Commission's allegations establish that

the defendants' conduct was both egregious and recurrent.[3]  The allegations also establish that the gross amount of pecuniary gain for the defendants include the following (including prejudgment interest): $17,183,061.66 for GTI, $10,194,243.97 for GAM, and $152,121.21 for King.

The statute does not define the term "violations."  At the September 17, 2012 status conference, the Commission asserted that courts have considered each victim of a scheme to constitute a separate violation, but did not offer specific support for that proposition.  While the Court has found some support for the position, other courts have assessed only a single penalty where the violations arose from a single scheme or plan.  *Compare, e.g.*, *SEC v. Rabinovich & Assocs., LP*, No. 07 Civ 10547, 2008 WL 4937360, at *6 (S.D.N.Y. Nov. 18, 2008) (concluding, following fraudulent scheme that raised $2,250,000 from more than 150 investors that, "[a]lthough [the defendant] engaged in repeated violations of the securities laws, they all arose from a single scheme or plan," and assessing a penalty of $130,000), *with SEC v. Kenton Capital Ltd.*, 69 F. Supp. 2d 1, 17 n.15 (D.D.C. 1998) (counting each of the twelve investors who sent money to the defendant as an individual violation, and assessing $100,000 per violation, for a total penalty of $1.2 million); *see generally SEC v. GTF Enters., Inc.*, No. 10-CV-4258, 2015 WL 728159, at *4 (S.D.N.Y. Feb. 19, 2015) (describing various methods of determining the number of "violations").

---

[3] Because GAM, GTI, and King defaulted and never appeared before the Court to contest the entry of final judgment, the court is unable to consider the defendants' demonstrated current and future financial condition.  The consented-to final judgments entered against other defendants assessed either no penalty, due to the defendant's sworn statement of financial condition, or a relatively minor penalty.  *See* Final J. as to Benjamin C. Dalley, ECF No. 83 (assessing a penalty of $40,000); Final J. as to Randolph M. Taylor, ECF. No. 84 (assessing no penalty); Final J. as to William B. Mitchell, ECF No. 85 (assessing no penalty).

Because the violations here similarly arose out of a single scheme or plan, for purposes of this case the Court will apply a single monetary penalty and will assess the maximum tier three penalty in the following amounts: $725,000 for GTI, $725,000 for GAM, and $150,000 for King. Considering the penalties assessed against the other defendants in this case and the Commission's representation that it does not even know what it might anticipate recovering from these defendants, the Court finds these penalties appropriate, even though they fall below the gross pecuniary gain each defendant obtained.  *Cf. Rabinovich*, 2008 WL 4937360, at *6.

As to the Commission's motion for entry of proposed final judgment for Defendant Garfield Taylor, the Court previously granted summary judgment to the Commission on all claims against Taylor.  *See* Dec. 13, 2012, Order Grant'g Pl. SEC's Mot. for Summ. J. Against Def. Garfield M. Taylor, ECF No. 78.  The Commission moved for entry of final judgment, and Taylor filed a Memorandum in Opposition before the stay was entered (and before Taylor pleaded guilty to related criminal charges).  *See generally* Def.'s Opp., ECF No. 88.  Since the stay was lifted, the Commission represents that it has attempted to reach Taylor, who is represented *pro se* and is currently incarcerated at the Allenwood Low federal corrections facility, on two occasions by certified overnight mail, but that the Commission has received no response from Taylor.  *See* Pl.'s Status Report, ECF No. 101.  Taylor has not filed anything with the Court.[4]  Accordingly, the Court will decide the motion on the basis of Taylor's previously-filed opposition.

In his opposition, Taylor does not oppose the issuance of a permanent injunction, but he does contest the imposition of disgorgement, prejudgment interest, and civil penalties.  *See*

---

[4] Moreover, during a telephonic status conference held on August 21, 2015, the Court was informed by personnel at FCI Allenwood Low that Taylor did not wish to participate in the telephone call.

Def.'s Opp. at 4.  The Commission's proposed disgorgement amount "only needs to be a 'reasonable approximation of profits causally connected to the violation.'"  *SEC v. Whittemore*, 744 F. Supp. 2d 1, 8 (D.D.C. 2010), *aff'd* 659 F.3d 1 (D.C. Cir. 2011) (quoting *SEC v. First City Fin. Corp., Ltd.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989)).  Once the Commission offers "a *prima facie* reasonable approximation of profits connected to the securities violation . . . the burden of proof shifts to the defendants to rebut the presumption" that the figure represents a reasonable approximation.  *Id.*  Disgorgement "rightly includes prejudgment interest to enable the Commission to recover the full amount of the defendants' unjust enrichment and to provide the possibility of complete compensation to the defrauded investors."  *SEC v. Levine*, 517 F. Supp. 2d 121, 141 (D.D.C. 2007).

The Commission has supported its motion with the Declaration of its enforcement division accountant that provides a detailed calculation of the disgorgement and interest the Commission seeks.  *See* Decl. of Donato Furlano, ECF No. 80–7; *see also* Decl. of Donato Furlano Exs. A–L, ECF Nos. 80–8 through 80–19.  That declaration establishes a *prima facie* reasonable approximation of the disgorgement and interest figures.  Although Taylor generally asserts that the Commission's disgorgement calculations do not take account of "millions" he paid back to lenders "by paying their mortgages and taxes," Taylor offers neither specific allegations nor any evidentiary support for that contention.  *Cf. United States v. Funds from Prudential Sec.*, 362 F. Supp. 2d 75, 82 (D.D.C. 2005) (granting government's motion for summary judgment and decree of forfeiture in *in rem* proceeding where claimant's opposition to government's showing that the funds were traceable to drug trafficking activities contained only "a series of allegations and conclusory statements" and failed to "set forth any facts with

specificity to support her bald assertions," or to "provide any factual evidence whatsoever").[5] Therefore, Taylor has failed to carry his burden to show that the figure does not represent a reasonable approximation.

The Court expects, however, that any amount recovered by the SEC, beyond a *de minimis* amount, will first be applied to cover the restitution ordered in Taylor's criminal case.  As part of his sentence Taylor was ordered to pay $28,609,438.00 in restitution.

Taylor also opposes the imposition of a civil penalty.  The Court previously declined to impose a civil penalty against Taylor's co-defendant, Maurice Taylor, because the Commission's proposed judgment did not include a civil monetary penalty.  The Court concluded that Maurice Taylor lacked adequate notice that the government would be seeking such penalties.[6]  The Commission's proposed judgment for Garfield Taylor similarly does not include an order for civil penalties and the Commission has not sought to amend that proposed final judgment in the over two years since the Court noted the discrepancy with respect to co-defendant Maurice

---

[5] Since he filed his Memorandum in Opposition, Taylor has pleaded guilty to criminal charges related to this case.  As part of that plea, Taylor agreed that the government's statement of offense and the profit figures contained therein fairly and accurately described his involvement in the fraudulent conduct at issue in this case.  That statement of offense established that Taylor engaged in the scheme from at least September 2006 through September 2010 and defrauded investors of over $25,000,000.00.  *See* Statement of Offense ¶¶ 2, 46, *United States v. Garfield M. Taylor*, No. 13-cr-0067 (D.D.C. Mar. 6, 2014), ECF No. 27.  As relevant to the entities discussed above, the statement of offense states that Taylor's misrepresentations and false statements induced 145 investors to invest $16,450,415.00 of principal in GTI, 13 investors to invest $2,683,577.00 of principal in GAM, and a non-profit children's organization named Hillcrest to invest several more million dollars in GAM.  *See id.* ¶¶ 12, 21 23–25.  Taylor was sentenced to 156 months imprisonment, three years of supervised release, and ordered to pay restitution in the amount of $28,609,438.00.

[6] The Commission's memorandum in support of the motion did request that the Court impose civil monetary penalties, but, unlike the proposed final judgments the Commission had previously filed against GTI, GAM, and King, the Commission did not include civil monetary penalties in the proposed order for final judgment against Maurice Taylor.

Taylor.  Therefore, the Court similarly declines to assess a civil monetary penalty against Garfield Taylor.

The Court is mindful that Taylor was central to the fraudulent conduct at issue in this case and that civil monetary penalties provide a critical financial disincentive to engage in securities fraud that is not similarly served by disgorgement, alone.  *See Kenton Capital, Ltd.*, 69 F. Supp. 2d at 17.  But given the Commission's omission, the previous award of restitution in Taylor's criminal case, and the amounts the Court anticipates Taylor will realistically be able to repay, the imposition of a significant civil penalty under these circumstances is not necessary to serve that deterrent purpose.

For the foregoing reasons, the Court grants the Commission's request that the Court assess civil monetary penalties against GTI, GAM, and King.  The Court also grants the Commission's motion for entry of the proposed final judgment as to defendant Garfield M. Taylor.  Orders of Final Judgment consistent with this Memorandum Opinion are separately and contemporaneously issued.

Dated:  September 28, 2015

RUDOLPH CONTRERAS
United States District Judge